IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark R. Schmidt, : 
        Petitioner : 
         : 
    v. : 
         : 
Schmidt, Kirifides and Rassias, PC : 
(Workers' Compensation : 
Appeal Board), :     No. 1039 C.D. 2021
        Respondent :     Argued: November 16, 2022


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
             HONORABLE ANNE E. COVEY, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge
             HONORABLE ELLEN CEISLER, Judge
             HONORABLE LORI A. DUMAS, Judge
             HONORABLE STACY WALLACE, Judge


OPINION BY
JUDGE COVEY                       FILED: November 14, 2023


      Mark R. Schmidt (Claimant), pro se,[1] petitions this Court for review of the Workers' Compensation (WC) Appeal Board's (Board) September 8, 2021 order reversing WC Judge (WCJ) Kathleen DiLorenzo's (WCJ DiLorenzo) decision that granted Claimant's Petition for Penalties (Penalty Petition). Claimant presents six issues for this Court's review: whether the Board erred by: (1) violating the standard of review by disregarding WCJ DiLorenzo's findings of fact and engaging in its own fact finding, in reaching its conclusions, and by failing to accord all reasonable inferences to the prevailing party, Claimant herein; (2) expressly refusing to define

---

[1] Claimant is a workers' compensation attorney.

whether cannabinoid (CBD) oil[2] is a *medicine or supply* within the meaning of the WC Act (Act);[3] (3) concluding that a claimant is required to submit the billing forms required of treatment *providers* to obtain reimbursement for the costs of *medicine and supplies* to treat his work injuries; (4) concluding it would violate federal law to direct an insurer to reimburse a claimant for an over-the-counter *dietary supplement*; (5) theorizing about the effect on insurers if they are required to pay for over-the-counter medicines or supplies, and disregarding the Act's humanitarian objectives regarding Claimant's right to treatment and the goal of enabling injured workers to return to/continue to work; and (6) disregarding Claimant's request for a remand to consider after-discovered evidence, namely, insurer's Petition to Review Utilization Review (UR) Determination (Petition).[4]

## Background

On April 14, 2017, in the course of his employment with Schmidt, Kirifides and Rassias, PC (Employer), Claimant sustained a work injury when he, in a squatting posture, loaded files into a trial bag for work, tipped the trial bag onto its wheels, had back pain, and fell over on his side. Specifically, he sustained an

---

[2] This Court has recognized that "CBD oil . . . [i]s not a controlled substance. *See* [Section 25.72 of the Department of Health's Regulations,] 28 Pa. Code § 25.72 (tetrahydrocannabinol, the active ingredient in marijuana, is a controlled substance, but CBD is not)." *Wash. Health Sys. v. Unemployment Comp. Bd. of Rev.*, 231 A.3d 79, 85 (Pa. Cmwlth. 2020).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

[4] The Dissent mischaracterizes Claimant's issues and states them in a manner that avoids Claimant's arguments. *See Schmidt v. Schmidt, Kirifides & Rassias, PC (Workers' Comp. Appeal Bd.)*, ___ A.3d ___ (Pa. Cmwlth. No. 1039 C.D. 2021, filed Nov. 14, 2023) (Fizzano Cannon, J., dissenting), slip op. at 2. The Dissent justifies this mischaracterization by stating: "Claimant's characterization of his arguments is calculated to avoid the legal realities that are applicable to CBD." *Id.*, ___ A.3d at ___, slip op. at 3. However, it is Claimant's issues that are before this Court, not the Dissent's perceived "legal realities." *Id.* The Dissent's issues would be properly raised at the UR stage of the proceedings, not at the penalty petition stage which is the case's current posture before this Court. *See infra* pp. 27-28.

2

aggravation of a preexisting degenerative disc disease at the levels of L4-5 and L5-S1 with radiculopathy. On October 17, 2018, WCJ Joseph Stokes (WCJ Stokes) granted a Petition for WC Claim (Claim Petition) for Claimant's lower back injury and awarded Claimant "all medical expenses incurred by [] Claimant that are reasonable and necessary and related to [] Claimant's employment injury . . . ." Reproduced Record (R.R.) at 59a. Claimant's work injury treatment has been limited to pain management, for which he is prescribed Oxycodone, OxyContin, Soma, Ativan, Zoloft, and CBD oil.

Claimant has been taking OxyContin, 30 milligrams (mg.), once in the morning and once at night since the work injury occurred. In addition, Claimant takes Oxycodone, as needed, approximately two to four times a day for breakthrough pain. Because extensive driving and sitting in courtroom chairs aggravated Claimant's pain, William Murphy, D.O., LPT (Dr. Murphy), suggested Claimant increase his medication dosages. Claimant opposed Dr. Murphy's suggestion because it would affect his ability to think, focus, and represent clients. After seeking different alternatives, such as aqua therapy, injections, and surgery, Dr. Murphy prescribed CBD oil in lieu of increasing Claimant's medication dosages.

Claimant preferred not to undergo surgery because he knew the risks that some of his clients had faced and he wanted to avoid being out of work for a prolonged amount of time for recovery. Rather, Claimant sought to exhaust all other options before resorting to surgery. Claimant did have two injections that Dr. Purewal[5] administered, one on September 6, 2019, and a second on September 20, 2019; however, each injection only provided pain relief for 7 to 10 days. Thereafter, Dr. Murphy prescribed Claimant CBD oil to avoid increasing Claimant's OxyContin

_____

[5] Dr. Purewal's full name does not appear in the Reproduced Record.

3

and Oxycodone dosages, and forestall his need to undergo surgery. Claimant's CBD oil treatment has proven to be successful.[6]

Claimant supplied the CBD oil prescription, *see* R.R. at 74a, and receipts to Employer, and Employer refused to reimburse Claimant's out-of-pocket CBD oil expenses on the basis that CBD oil is not a pharmaceutical drug. On October 2, 2019, Claimant filed the Penalty Petition, alleging therein that Employer violated the Act by failing to reimburse him for out-of-pocket costs for medical treatment. WCJ DiLorenzo conducted hearings on November 6, 2019, and February 26, 2020.

> **WCJ DiLorenzo**, **found the following facts**:
>
> 8. On October 2, 2019, [] Claimant filed against [Employer] a [Penalty Petition] in which [] Claimant requested an assessment of an amount for a penalty against [Employer] because [Employer] violated the terms of the . . . Act and/rules [sic] and/or regulations with respect thereto since it didn't reimburse [] Claimant's out[-]of[-]pocket costs for medical treatment, specifically for CBD or cannabinoid oil for the work injury of April 14, 2017. The [Penalty P]etition was assigned to [WCJ DiLorenzo] on October 3, 2019[,] and [Employer] denied any liability for any penalty.
>
> 9. In support of [the Penalty Petition], [] Claimant presented his testimony and submitted the transcripts of [] Claimant's deposition testimony, the Decisions and

---

[6] Claimant has not needed to increase his OxyContin and Oxycodone dosages and has forestalled his need for surgery. Clearly, Claimant has benefitted from using CBD oil. The Dissent ignores this significant fact. The purpose of the CBD oil was to avoid increasing Claimant's medication dosages, which it did, not to eliminate the medications altogether. *See* R.R. at 82a (In his notes, Dr. Murphy wrote: "I have recommended that [Claimant] try CBD oil. The rationale behind this recommendation is to help treat his pain and avoid increasing his dose of opioid analgesic medications."); R.R. at 178a-179a (WCJ Finding of Fact 17) ("[Claimant is] credible about the prescription of the CBD oil because it avoided an increased dose of medication and forestalled surgery because Dr. Murphy's records in evidence aren't indicative of [] Claimant's election for surgery at or about the time of the prescription of the CBD oil or thereafter.").

4

Orders of October 17, 2018[,] and April 3, 2019, receipts, and prescriptions by[,] and records of[,] [Dr.] Murphy . . . into evidence. In opposition thereto, [Employer] submitted a report of Richard Fruncillo, M.D., Ph.D. [(Dr. Fruncillo)], the curriculum vitae of Dr. Fruncillo, a package label, a [United States Food and] Drug Administration (FDA) regulation, an e[]mail, and a report of Eugene Elia, M.D. [(Dr. Elia)] into evidence.

. . . .

11. [] Claimant's testimony on January 12, 2018[,] is summarized as follows:

. . . .

e.) On April 14, 2017, [] Claimant, in a squatting posture, loaded files into a trial bag for work, tipped it onto the bag's wheels, had back pain, and went over on his side.

f.) [] Claimant received treatment from Edward Stankiewicz, M.D. and Dr. Murphy and took Oxycodone, OxyContin, Soma, Ativan, and Zoloft for [a] one[-]year time frame since April 2017.

12. [] Claimant's testimony on November 6, 2019[,] is summarized as follows:

a.) [] **Claimant had out**[-]**of**[-]**pocket costs for CBD or cannabinoid oil after Dr**. **Murphy's recommendation of it**, **as opposed to an increased dose of medication**. [] **Claimant's treatment options were aqua therapy**, **CBD oil**, **injections**, **and surgery**.

b.) **CBD oil has no** [tetrahydrocannabinol, commonly referred to as] **THC**[,] **in it and thus no harmful side effects**.

c.) [] Claimant buys CBD oil over the counter and doesn't go to a pharmacist for it despite **Dr**. **Murphy's written prescription for it since April 8**, **2019**. He buys it from a specialty natural remedy store and uses it on [sic] every night for sleep.

d.) [] Claimant received 2 injections from Dr. Purewal on September 6 and 20, 2019[,] and they provided relief for

5

about 7 to 10 days. Dr. Purewal recommended a nerve block to [] Claimant.

e.) [] **Claimant didn't need HCFA** (Healthcare Finance Administration) **forms for the submission of the bills for the CBD oil to** [**Employer's**] [**WC**] **insurance carrier**.

13. Statements in [] Claimant's affidavit on February 13, 2020[,] are summarized as follows:

a.) [] **Claimant bought both CBD topical and oil treatments and used each type in accordance with the directions on the packaging materials**, **specifically with an application of the topical lotion on the skin of his lower back and with the use of the provided dropper for placement of the oil under his tongue**.

b.) [] **Claimant used the CBD topical and oil treatments at different times for measurements of** [] **Claimant's responses and the oil was more effective than the topical lotion**.

c.) [] **Claimant only purchased the CBD oil after his initial trial**.

. . . .

14. Dr. Murphy's records are summarized as follows:

a.) **Dr**. **Murphy prescribed CBD oil/topical application for** [] **Claimant's affected area on April 8**, **2019**. **Dr**. **Murphy recommended the CBD oil for the attempted treatment of** [] **Claimant's pain and the avoidance of increased doses of opioid analgesic medications and the CBD oil was reasonable**, **necessary**, **and related medical treatment for** [] **Claimant's work injury**.

. . . .

g.) Dr. Murphy treated [] Claimant on October 21, 2019, when [] Claimant was using CBD oil as an adjunct to his pain medication and Dr. Murphy initiated Horizant 600 mg. extended release on 1 occasion per day. [] Claimant took the same medicines as those on April 24, 2018, in addition to the use of Lidoderm 5% topical patches with

their applications in 1 to 3 sites for 12 hours and then for another 12 hours after a 12[-]hour break.

. . . .

16. Dr. Elia's statements are summarized as follows:

a.) Dr. Elia is a board[-]certified [] orthopedic surgeon, [sic] examined [] Claimant on October 2, 2019, and took a history about [] Claimant's work injury and treatment for it and long history of low back issues. Dr. Elia reviewed medical and [WC] records about [] Claimant and a transcript of [] Claimant's testimony.

. . . .

k.) [] **Claimant's treatment to date has been reasonable and necessary and further treatment in the nature of periodic re-evaluations by Dr. Murphy and recommendations for therapy and medication are needed**. [] Claimant can work with restrictions.

17. [] **Claimant is credible** on the basis of his demeanor during his testimony at a hearing before [WCJ DiLorenzo]. **He's particularly credible that he uses CBD** . . . **oil on** [sic] **every night for sleep after Dr. Murphy's recommendation of it because Dr. Murphy substantiated his recommendation of CBD oil with a prescription for it. He's credible about the prescription of the CBD oil because it avoided an increased dose of medication and forestalled surgery because Dr. Murphy's records in evidence aren't indicative of [] Claimant's election for surgery at or about the time of the prescription of the CBD oil or thereafter. He's credible that CBD oil has no harmful side effects because Dr. Murphy's records in evidence aren't indicative of any alleged side effects from [] Claimant's use of it. He's credible about the lack of any need for HCFA** . . . **forms for the submission of the bills for the CBD oil to [Employer's] [WC] insurance carrier because Dr. Fruncillo established that CBD oil isn't a drug and is a "dietary supplement."** *He's particularly credible about his submission of the receipts for the CBD oil and* [*Employer's*] *denial of payment of CBD oil because* [*Employer's*] *counsel's statements substantiated* [*Employer's*] *counsel's receipts for the CBD*

*oil from [] Claimant and [Employer's] denial of payment for it and because the e[]mail from [] Claimant established the lack of payment.*

18. **Dr. Fruncillo is credible and persuasive for the most part** because the statements in his curriculum vitae established his expertise and experience to formulate his opinions with respect to CBD oil.  **He's credible and persuasive with respect to CBD oil's status as a "dietary supplement," as opposed to an "over-the-counter" drug or drug because the statements on the label substantiated that.**  **He isn't credible and persuasive that [] Claimant's CBD use could potentially cause adverse medical consequences for [] Claimant on the bases of any evidence of [] Claimant's experience of any adverse medical consequences, of the lack of any testimony from [] Claimant about adverse medical consequences with his use of CBD oil, and of the lack of any statements in Dr. Murphy's records about any adverse medical consequences with [] Claimant's use of CBD oil.**

19. Dr. Elia is credible and persuasive with the exception of his examination finding about [] Claimant's bending maneuver with [] Claimant's hands to the floor because [] Claimant credibly refuted that.  **Dr[.] Elia is credible and persuasive about [] Claimant's reasonable and necessary treatment to date because [] Claimant's testimony and Dr. Murphy's statements substantiated that, inclusive of [] Claimant's testimony about the use of the CBD oil.**

. . . .

22. [WCJ DiLorenzo] takes judicial notice: "Under the [Federal Employees Compensation Act (]FECA[)[7]], **the** [United States] Department of Labor[ and Industry's] (U.S. DOL) Office of [WC] Programs (**OWCP**) **may provide to an employee injured while in the performance of duty, the** services, appliances, and **supplies prescribed or recommended by a qualified physician, which OWCP considers ["]likely to cure, give relief, reduce the degree or the period of disability,**

---

[7] 5 U.S.C. §§ 8101-8193.

or aid in lessening the amount of the monthly compensation." *See*[] FECA . . . Bulletin, No. 17-03, Issue Date March 22, 2017.

23. [WCJ DiLorenzo] takes judicial notice: "**In accordance with the discretion granted to [the U.S.] DOL and delegated to OWCP**, OWCP's Division of Federal Employees' Compensation (**DFEC**) **is instituting a new policy for authorizing herbal supplements for work-related illnesses or injuries**." *See*[] FECA . . . Bulletin, No. 17-03, Issue Date March 22, 2017.

. . . .

29. **Based on the evidence**, **inclusive of the testimony of [] Claimant and statements of Dr**. **Fruncillo**, [] **Claimant's CBD oil is a "supply" and [] Claimant isn't a "health care provider**." Since the basic premise in [**WC**] **matters is that the** [**Act**] **is remedial in nature and intended to benefit the worker, the Act must be liberally construed to effectuate its humanitarian objectives and the word "supply" in the Act is thus liberally construed to include [] Claimant's CBD oil**. *See*[] *Hannaberry HVAC v. W*[*orkers'*] *C*[*omp*]. *A*[*ppeal*] *B*[*d*]. *(Snyder)*, 834 A.2d [524,] 528 (Pa.[] 2003) (quoting *Peterson v. W*[*orkmen's*] *C*[*omp*]. *A*[*ppeal*] *B*[*d*]. *(PRN Nursing Agency)*, 597 A.2d 1116 (Pa.[] 1991)).

30. **Based on [] Claimant's credible testimony**, **the need for the supplies of the CBD oil is a direct result of [] Claimant's work injury and**, **in his circumstances at least**, **the supplies of the CBD oil directly address [] Claimant's sleep problems**, **the amount of his medication doses**, **and the prolongment of life without surgery**, **as results of the work injury**. *See*[] *Griffiths v. W*[*orkers'*] *C*[*omp*]. *A*[*ppeal*] *B*[*d*]. *(7 Stars Farm, Inc.)*, 943 A.2d 242 (Pa.[] 2008). **Based on [] Claimant's credible testimony**, **the CBD oil is a supply that addresses and is directly responsive to [] Claimant's orthopedic issue from the work injury, is critical to [] Claimant's ongoing care and health for [] Claimant's work injury**, **and helps with the remediation of problems from the work injury**. *See*[] *id*.

R.R. at 174a-182a (bold and italic emphasis added).

On April 8, 2020, WCJ DiLorenzo granted the Penalty Petition. WCJ DiLorenzo concluded that Employer was liable to pay for the costs of Claimant's CBD oil because it was a medical supply under the Act and part of Claimant's reasonable and necessary medical treatment, and directed Employer to pay the costs therefor. However, WCJ DiLorenzo did not assess penalties against Employer. Employer appealed to the Board.

On September 8, 2021, the Board reversed WCJ DiLorenzo's decision. The Board concluded that CBD oil cannot be a reasonable and necessary medical treatment where the FDA has issued several warning letters to firms marketing CBD products for violating federal law, including the Federal Food, Drug, and Cosmetic Act (Federal Drug Act), 21 U.S.C. §§ 801-904.[8] Specifically, the Board held:

> Based on the stated position and recent actions of the FDA, an insurer or employer cannot be required to pay for cannabis or cannabis-derived products, including [CBD oil]. Therefore, [Employer's] failure to reimburse Claimant for his CBD oil expenses used to treat his work injuries is not a violation of the Act, and the Penalty Petition should have been denied. Finding a violation here is concomitant to compelling an employer to violate [f]ederal law.

Board Dec. at 10.

Board Commissioner (Commissioner) James Zurick (Zurick) issued a Dissent, joined by Commissioner David Wilderman, wherein Commissioner Zurick concluded:

> [WCJ DiLorenzo] did not err in awarding Claimant reimbursement. The Majority's contrary determination would have an untenable impact on Claimant, specifically on him having to remain on opioid medication if he was denied reimbursement for CBD [oil], as testified to by his

---

[8] As of October 24, 2019, the FDA has not approved any applications to *market* cannabis for the treatment of any disease or condition.

> doctor. Instead, the Board should abide by the humanitarian objectives of the Act and affirm [WCJ DiLorenzo's d]ecision and [o]rder.

R.R. at 205a (Board Dec., Dissent at 1). Claimant appealed to this Court.[9]

## Discussion

Initially, "[i]n a penalty petition proceeding, the claimant has the burden of proving that a violation of the Act occurred." *CVA, Inc. v. Workers' Comp. Appeal Bd. (Riley)*, 29 A.3d 1224, 1227 (Pa. Cmwlth. 2011). In this case, Claimant alleged that Employer violated the Act by not reimbursing him for the CBD oil that Dr. Murphy prescribed to treat his work-related injury.

Section 306(f.1)(1)(i) of the Act specifies, in pertinent part, that "[t]he employer shall provide payment . . . for reasonable surgical and medical services . . . , including . . . medicines and supplies, as and when needed." 77 P.S. § 531(1)(i). Section 306(f.1)(1)(ii) of the Act also declares, in relevant part: "In addition to the above service, the employer shall provide payment for medicines and supplies . . . in accordance with this section." 77 P.S. § 531(1)(ii). Section 306(f.1)(5) of the Act, 77 P.S. § 531(5), further provides that once an employer's liability for a work-related injury is established, "the **employer must pay the claimant's medical bills** within 30 days of receiving them, **unless the employer disputes the reasonableness and necessity of the treatment**."[10] *CVA, Inc.*, 29

---

[9] "Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights were violated." *DiLaqua v. City of Phila. Fire Dep't (Workers' Comp. Appeal Bd.)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2020) (quoting *Bristol Borough v. Workers' Comp. Appeal Bd. (Burnett)*, 206 A.3d 585, 595 n.6 (Pa. Cmwlth. 2019)).

[10] "If the employer believes that the treatment is not reasonable and necessary, it must submit the bills for a [UR] or face the possibility of a penalty." *CVA, Inc.*, 29 A.3d at 1227. Any argument concerning whether Claimant's CBD oil use was reasonable and necessary is not

11

A.3d at 1227 (emphasis added); *see also Listino v. Workmen's Comp. Appeal Bd. (INA Life Ins. Co.)*, 659 A.2d 45, 47 (Pa. Cmwlth. 1995). Thus, to prevail on his Penalty Petition, Claimant had to prove that he submitted receipts for Employer to reimburse him for his out-of-pocket expenses for treatment causally related to his work injury and that Employer refused to pay him.

> The law is well[ ]settled that "[**t]he WCJ has exclusive authority to act as fact**[]**finder**, determine credibility of witnesses, and weigh the evidence. The WCJ's findings will not be disturbed if they are supported by substantial, competent evidence." *Stepp v. Workers' Comp. Appeal Bd. (FairPoint Commc'ns, Inc.)*, 99 A.3d 598, 601 n.6 (Pa. Cmwlth. 2014) (citation omitted).
>
>> 'Moreover, we are to draw all reasonable inferences which are deducible from the evidence in support of the factfinder's decision in favor of that prevailing party.' It does not matter if there is evidence in the record supporting findings contrary to those made by the WCJ; the pertinent inquiry is whether the evidence supports the WCJ's findings.
>
> *3D Trucking Co., Inc., v. Workers' Comp. Appeal Bd. (Fine & Anthony Holdings Int'l)*, 921 A.2d 1281, 1288 (Pa. Cmwlth. 2007) (citation omitted) (quoting *Waldameer Park, Inc. v. Workers' Comp. Appeal Bd. (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003)).

*Rogele, Inc. v. Workers' Comp. Appeal Bd. (Hall)*, 198 A.3d 1195, 1204 (Pa. Cmwlth. 2018) (emphasis added).

Here, WCJ DiLorenzo expressly *found* that, by October 17, 2018 decision, Employer "recognized [] Claimant's lower back injury[,]" and was declared liable to Claimant for "expenses for reasonable and necessary medical treatment with a relationship to [] Claimant's work injury . . . ." (Findings of Fact

---

properly before this Court, as that is an issue to be raised in a UR review, and there is no UR petition currently before this Court.

(FOF) 4, 19); Dr. Murphy prescribed CBD oil to treat Claimant's work injury (*see* FOF 12.a, 14.a); CBD oil is a supply for which Employer is responsible to pay under the Act (*see* FOF 30); Claimant submitted his receipts to Employer for reimbursement (*see* FOF 17); and Employer did not reimburse Claimant as the Act requires (*see* FOF 17). These findings are supported by substantial record evidence.

**The Board Violated the Standard of Review**

Claimant argues that the Board erred by violating the standard of review by disregarding WCJ DiLorenzo's findings of fact and engaging in its own fact finding to support its conclusions, and failing to accord all reasonable inferences to the prevailing party, Claimant herein.

The law is well settled:

Where substantial evidence supports the WCJ's findings of fact, those "findings are conclusive on appeal, despite the existence of contrary evidence." *Miller v. Workers' Comp*[.] *Appeal* [*Bd.*] *(Millard Refrigerated* [*Servs.*] *& Sentry Claims Serv*[.]*)*, 47 A.3d 206, 209 (Pa. Cmwlth. 2012). In determining whether there is substantial evidence, we examine the record, and the reasonable inferences deducible therefrom, in the light most favorable to the party prevailing before the fact[]finder. *Elliott Turbomachinery Co. v. Workers' Comp*[.] *Appeal* [*Bd.*] *(Sandy)*, 898 A.2d 640, 647 (Pa. Cmwlth. 2006).

*Glass v. Workers' Comp. Appeal Bd. (City of Phila.)*, 61 A.3d 318, 325 n.4 (Pa. Cmwlth. 2013).

[T]he law is clear that neither the Board nor the Court may review the evidence or reweigh the WCJ's credibility determinations. In addition, "Section 422(a) [of the Act, 77 P.S. § 834,] does not permit a party to challenge or second-guess the WCJ's reasons for credibility determinations. Unless made arbitrarily or capriciously, a WCJ's credibility determinations will be upheld on appeal." *Dorsey v. Workers' Comp. Appeal Bd. (Crossing*

13

*Constr. Co.)*, 893 A.2d 191, 195 (Pa. Cmwlth. 2006) (citation omitted).

*Pa. Uninsured Emps. Guar. Fund v. Workers' Comp. Appeal Bd. (Lyle)*, 91 A.3d 297 (Pa. Cmwlth. 2014). "[This Court] cannot set aside the WCJ's factual finding[s] . . . without invading the province of the WCJ to weigh the evidence and make credibility determinations." *Almeida v. Workers' Comp. Appeal Bd. (Herman Goldner Co.)*, 844 A.2d 642, 645 n.5 (Pa. Cmwlth. 2004).

Claimant first asserts that the Board suggests that the evidence does not reflect the item at issue is CBD oil. In its decision, the Board repeatedly referenced the product as CW Hemp, and did not observe the "word" CBD oil as presented in the evidence.

In its recitation of the facts, the Board stated: "Claimant submitted personal receipts from specialty food stores. The majority of the products purchased contained the phrase 'CW Hemp.' None of the items purchased contained the acronym 'CBD' or the word 'cannabinoid' or a derivative thereof.'" R.R. at 196a. However, Employer did not contest that Claimant purchased and sought reimbursement for CBD oil, nor did any witness testify that Claimant did not purchase and seek reimbursement for CBD oil and/or that he did not submit receipts therefor. Indeed, WCJ DiLorenzo found as a fact:

> [Claimant is] particularly credible about his **submission of the receipts for the CBD oil** and [Employer's] denial of payment of CBD oil because [**Employer's**] **counsel's statements substantiated** [**Employer's**] **counsel's receipts for the CBD oil from** [] **Claimant** and [Employer's] denial of payment for it and because the e[]mail from [] Claimant established the lack of payment.

R.R. at 179a (FOF 17) (emphasis added). Notwithstanding the above, the Board did not rely on the fact that the receipts did not state CBD oil as a basis for its conclusion

14

that Claimant's payments therefor are not subject to reimbursement. Accordingly, any error in this regard is harmless.

Claimant next contends that the Board erred by suggesting that Claimant misused a topical lotion by ingesting it. Specifically, the Board stated in its discussion: "Although Claimant has had a prescription for topical CBD oil since April 8, 2019, he bought CBD oil for oral consumption over[ ]the[ ]counter from specialty natural remedy stores and gave the receipts to defense counsel. ([FOF] 10; Ex. C-04)." R.R. at 201a. The Board subsequently concluded that "it is undisputed that Claimant bought the CBD oil apart from any prescription or plan of any health care provider, including Dr. Murphy." R.R. at 202a. Notwithstanding that "[t]he WCJ has exclusive authority to act as fact[-]finder," the Board disregarded the WCJ's findings of fact and engaged in its own fact finding.[11] *Rogele, Inc.*, 198 A.3d at 1204 (quoting *Stepp*, 99 A.3d at 601 n.6).

---

[11] Notwithstanding that "[t]he WCJ has exclusive authority to act as fact[-]finder," the Dissent disregards WCJ DiLorenzo's findings of fact and makes statements that are not supported by the record evidence. *Rogele, Inc.*, 198 A.3d at 1204 (quoting *Stepp*, 99 A.3d at 601 n.6). For example, the Dissent states that Claimant is seeking reimbursement for an "unprescribed substance," "without a medical prescription, and without any supporting documentation that the substance was approved by a treating doctor as part of a treatment plan[.]" *Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 10. However, WCJ DiLorenzo expressly found that Dr. Murphy recommended the CBD oil, and that Dr. Murphy substantiated his recommendation of CBD oil with a prescription for it. *See* R.R. at 178a-179a (FOF 17). These findings are supported by substantial evidence. *See* R.R. at 74a (April 8, 2019 prescription for "CBD oil/topical"); R.R. at 82a (November 5, 2019 Doctor's note regarding CBD oil prescription wherein **Dr. Murphy states**: "In addition to medications, **I have recommended that** [**Claimant**] **try CBD oil**.") (emphasis added). Importantly, Dr. Murphy does not state in his note that the CBD is for topical use only. Rather the prescription gave Claimant the option of using CBD oil or topical. Yet the Dissent insists that Claimant was prescribed CBD for topical use only; thus, his use of CBD oil is outside of his doctor's treatment plan. WCJ DiLorenzo further found that Claimant was credible about the prescription of the CBD oil because it avoided an increased dose of medication and forestalled surgery. *See* R.R. at 178a-179a (FOF 17); *see also* R.R. at 82a (November 5, 2019 doctor's note regarding CBD oil prescription wherein Dr. Murphy states: "The rationale behind this recommendation[, i.e., CBD oil,] is to help treat [Claimant's] pain and avoid

15

Concerning the Board's first above-quoted statement, the Board cites WCJ DiLorenzo's Finding of Fact 10 and Claimant's Exhibit C-4 as support therefor. Relative to the second statement, the Board does not cite any authority therefor. WCJ DiLorenzo's Finding of Fact 10 states:

> Receipts in evidence are summarized as follows:
>
> a.) A bill on 4/13/[20]19 from Kimberton Whole Foods totaled $105.98 for **ChWeb FullStrMCTmint** at $70.99 **100** [**milliliters**] **and PKindPainSalve** at $24.99.
>
> b.) A bill on 5/21/[20]19 from Martindale's Natural Market totaled $119.99 for CW Hemp Max Strengt (sic).
>
> c.) A bill on 7/22/[20]19 from Martindale's Natural Market totaled $290.97 for NP GI Nat. Probio Meg at $30.99, CW Hemp 60 mg. at $129.99, and CW Hemp 60 mg. at $129.99.
>
> d.) A bill on 10/8/[20]19 from Martindale's Natural Market totaled $129.99 for CW Hemp 60 mg.

---

increasing his dose of opioid analgesic medications."). The Dissent's characterization that Claimant is seeking reimbursement "with no support whatsoever other than a purchase receipt from a food store[,]" *Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 10, is completely contrary to the evidentiary record and WCJ DiLorenzo's findings of fact. *See* R.R. at 178a-179a (FOF 17). In essence, the Dissent disagrees with WCJ DiLorenzo's findings of fact, which are replete with references to and discussion of Claimant's CBD oil. It is hard to fathom that WCJ DiLorenzo after finding that Claimant first tried CBD lotion then CBD oil, and that Claimant used each treatment as directed, did not know the difference between the two. *See* FOF 13(a) ("Claimant bought both CBD topical and oil treatments and used each type in accordance with the directions on the packaging materials, specifically with an application of the topical lotion on the skin of his lower back and with the use of the provided dropper for placement of the oil under his tongue."), (b) ("Claimant used the CBD topical and oil treatments at different times for measurements of [] Claimant's responses and the oil was more effective than the topical lotion."), (c) ("Claimant only purchased the CBD oil after his initial trial."). Clearly, WCJ DiLorenzo was not referencing topical use when referring to CBD oil.

e.) A bill on 1/6/[20]20 from Martindale's Natural Market totaled $118.99 for CW Hemp 60 mg.

f.) A bill on 2/4/[20]20 from Martindale's Natural Market totaled $209.99 for CW Hemp Extract 60 mg.

R.R. at 174a (emphasis added). Claimant's Exhibit C-4 consists of copies of the above-quoted receipts. *See* R.R. at 69a-72a. Neither WCJ DiLorenzo's Finding of Fact 10, nor Claimant's Exhibit C-4, support the Board's statements.

Notwithstanding,

[t]he relevant inquiry in a substantial evidence analysis is not whether "there is evidence in the record which supports a factual finding contrary to that made by the WCJ" but, rather, "whether there is any evidence which supports the WCJ's factual finding." *Hoffmaster v. Workers' Comp*[.] *Appeal* [*Bd.*] *(Senco* [*Prods.*]*, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998). The Court must view the evidence in a light most favorable to the party that prevailed before the fact[-]finder.

*DTE Energy Co., Inc. v. Workers' Comp. Appeal Bd. (Weatherby)*, 245 A.3d 413, 421 (Pa. Cmwlth. 2021).

WCJ DiLorenzo found as a fact:

Statements in [] Claimant's affidavit on February 13, 2020[,] are summarized as follows:

a.) [] Claimant bought both CBD topical and oil treatments and used each type in accordance with the directions on the packaging materials, specifically with an application of the topical lotion on the skin of his lower back and with the use of the provided dropper for placement of the oil under his tongue.

b.) [] Claimant used the CBD topical and oil treatments at different times for measurements of [] Claimant's responses and the oil was more effective than the topical lotion.

c.) [] Claimant only purchased the CBD oil after his initial trial.

17

R.R. at 175a (FOF 13).

WCJ DiLorenzo expressly found Claimant credible relative to Claimant's above statements, explaining:

> [Claimant is] particularly credible that he uses CBD or cannabinoid oil [] every night for sleep after Dr. Murphy's recommendation of it because Dr. Murphy substantiated his recommendation of CBD oil with a prescription for it. He's credible about the prescription of the CBD oil because it avoided an increased dose of medication and forestalled surgery because Dr. Murphy's records in evidence aren't indicative of [] Claimant's election for surgery at or about the time of the prescription of the CBD oil or thereafter.

R.R. at 179a (FOF 17).

Dr. Murphy's April 8, 2019 prescription stated: "CBD oil/topical[.]" R.R. at 74a. Thus, the prescription gave Claimant the option of using CBD oil or topical treatments.[12] **Dr**. **Murphy stated** in his November 5, 2019 note regarding the CBD oil prescription: "In addition to medications, **I have recommended that [Claimant] try CBD oil**." R.R. at 82a (emphasis added). Importantly, Dr. Murphy does not state in his note that the CBD is for topical use only. The first receipt reflects Claimant purchased two items - a lotion and an oil. *See* R.R. at 70a. The WCJ credited Claimant's explanation that he used each type *as directed* by the package instructions. Thus, substantial evidence supports WCJ DiLorenzo's Findings of Fact 13 and 17. Accordingly, the Board erred by suggesting that

---

[12] Although the Dissent acknowledges there is a difference between the **oil** use and **topical** use of CBD, it nonetheless ignores the fact that Dr. Murphy prescribed CBD **oil** and claims that the CBD is restricted to topical use which is commonly applied as a lotion because the prescription said to apply to affected area as needed and as directed. *See Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 16-17. However, the prescription also said oil, which is not *applied* at all. Thus, Dr. Murphy's prescription gave Claimant the option of using either "CBD oil" or "topical." R.R. at 74a. WCJ DiLorenzo, who was the factfinder, found Claimant credible, and none of WCJ DiLorenzo's findings support the Dissent's position.

18

Claimant misused a topical lotion by ingesting it, and disregarded WCJ DiLorenzo's findings of fact and engaged in its own fact finding, in reaching its conclusion.

Claimant next maintains that the Board, in its decision, suggested that the medical evidence did not establish that CBD oil was part of Dr. Murphy's "plan of care." Specifically, the Board stated: "Additionally, the WCJ found that Claimant's CBD oil regimen was not an actual part of treatment, but 'incidental to [] Claimant's treatment for the work injury, inclusive of the treatment by Dr. Murphy, a health care provider . . . .' ([FOF] 31)." R.R. at 201a.

However, WCJ DiLorenzo's Finding of Fact 31 provided:

> The expenses for CBD oil, **even if** not an actual part of the treatment, [are] compensable because [they are] incidental to [] Claimant's treatment for the work injury, inclusive of the treatment by Dr. Murphy, a health care provider subject to utilization review. *See*[] *Roadway Express, Inc. v. W*[*orkmen's*] *C*[*omp*]. *A*[*ppeal*] *B*[*d*]. *(Ostir)*, 520 A.2d 1261 (Pa.[] 1987).

R.R. at 182a (FOF 31) (emphasis added). Clearly, WCJ DiLorenzo was speaking in the alternative, or in addition to Findings of Fact 14 and 17. In Finding of Fact 14, WCJ DiLorenzo stated, in relevant part:

> Dr. Murphy's records are summarized as follows:
>
> a.) **Dr. Murphy prescribed CBD oil/topical application for [] Claimant's affected area on April 8, 2019. Dr. Murphy recommended the CBD oil for the attempted treatment of [] Claimant's pain and the avoidance of increased doses of opioid analgesic medications and the CBD oil was reasonable, necessary, and related medical treatment for [] Claimant's work injury.**
>
> . . . .
>
> g.) Dr. Murphy treated [] Claimant on October 21, 2019, when [] Claimant was using CBD oil as an adjunct to his pain medication and Dr. Murphy initiated Horizant 600 mg. extended release on 1 occasion per day. [] Claimant

19

took the same medicines as those on April 24, 2018, in addition to the use of Lidoderm 5% topical patches with their applications in 1 to 3 sites for 12 hours and then for another 12 hours after a 12[-]hour break.

R.R. at 175a-176a (FOF 14) (emphasis added). In Finding of Fact 17, WCJ DiLorenzo expressly found:

[Claimant is] particularly credible that he uses CBD or cannabinoid oil [] every night for sleep **after Dr. Murphy's recommendation of it because Dr. Murphy substantiated his recommendation of CBD oil with a prescription for it. He's credible about the prescription of the CBD oil** because it avoided an increased dose of medication and forestalled surgery because Dr. Murphy's records in evidence aren't indicative of [] Claimant's election for surgery at or about the time of the prescription of the CBD oil or thereafter.

R.R. at 178a-179a (emphasis added). WCJ DiLorenzo patently found that CBD oil was part of Dr. Murphy's treatment plan.[13] Accordingly, the Board erred by indicating that CBD oil was outside of Dr. Murphy's medical plan.

_____

[13] Contrary to the Dissent's statements that CBD oil was not mentioned in Dr. Murphy's October 21, 2019 report and therefore was not part of Dr. Murphy's treatment plan, CBD oil was mentioned in the October 21, 2019 report. Specifically, Dr. Murphy stated: "[Claimant] has been using CBD oil as an adjunct to his pain medication regimen." R.R. at 79a. Moreover, the CBD was prescribed, *see* R.R. at 74a (April 8, 2019 prescription for "CBD oil/topical"), and is included in Dr. Murphy's November 5, 2019 doctor's note. R.R. at 82a (November 5, 2019 Doctor's note regarding CBD oil prescription wherein Dr. Murphy states: "In addition to medications, I have recommended that [Claimant] try CBD oil. The rationale behind this recommendation is to help treat his pain and avoid increasing his dose of opioid analgesic medications."); *see also* R.R. at 178a-179a (FOF 17) ("[Claimant is] credible about the prescription of the CBD oil because it avoided an increased dose of medication and forestalled surgery because Dr. Murphy's records in evidence aren't indicative of [] Claimant's election for surgery at or about the time of the prescription of the CBD oil or thereafter.").

20

Finally, Claimant declares that the Board erred by concluding that the evidence does not establish non-payment, because the email sent to Employer never mentions payment. Specifically, the Board stated:

> The WCJ credited Claimant's submission of the receipts and found that the "e[]mail from [] Claimant established the lack of payment." ([FOF] 17). *Cf.* Section 306(f.1)(5), 77 P.S. § 531(5)[] ("All payments to providers for treatment provided pursuant to this [A]ct shall be made within thirty (30) days of receipt of such bills and records[.]"). The five-sentence email, sent on October 25, 2019, never mentions payment of medical bills but discusses the logistics of the underlying litigation. (Ex. D02).

R.R. at 201a. The above-referenced email stated:

> My evidence will consist of my testimony and Dr. Murphy's records. There is no wage loss, so records are permissible.
>
> My efforts in this case are only slightly for this specific case, and more so directed at **an effort to establish a claimant's right to reimbursement**. I understand your position – but there always has to be a first case on every issue. Might as well be the one where the claimant won't sue me for malpractice.

R.R. at 137a (emphasis added).

Importantly, Employer did not contest that it did not reimburse Claimant for his out-of-pocket costs for his CBD oil, nor did Employer present any evidence to show that Employer reimbursed Claimant for his out-of-pocket costs. Indeed, non-payment was the entire basis for the Penalty Petition. Rather, Employer maintained the defense that it is not legally required to reimburse Claimant. The fact that the Board appears to attempt to alter WCJ DiLorenzo's fact finding evidences the Board's disingenuous rationale for reversing WCJ DiLorenzo's decision. Instead of addressing the legal issues, the Board has completely disregarded WCJ

21

DiLorenzo's findings of fact, which are supported by substantial evidence, and proceeded to do its own fact finding to support its preferred conclusions. Accordingly, the Board erred by concluding that the evidence did not establish non-payment.

**The Board Expressly Declined to Address the Central Issue**

Claimant next argues that the Board erred by expressly refusing to define whether CBD oil is a *medicine or supply* within the meaning of the Act. Rather, the Board stated: "[it] need not answer the question of whether CBD [o]il constitutes medical 'supplies' under Section 306(f.1)(1)(i) of the Act as Claimant did not follow the rules triggering [Employer's] obligation to pay." R.R. at 198a.

Section 306(f.1) of the Act provides, in relevant part:

(1)(i) **The employer shall provide payment in accordance with this section for reasonable** surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, **medicines and supplies**, **as and when needed**.

. . . .

(2) **Any** *provider* who treats an injured employe **shall be required to file periodic reports with the employer** on a form prescribed by the [Pennsylvania Department of Labor & Industry (Pennsylvania DOL)] which shall include, where pertinent, history, diagnosis, treatment, prognosis and physical findings. The report shall be filed within ten (10) days of commencing treatment and at least once a month thereafter as long as treatment continues. **The employer shall not be liable to pay for such treatment until a report has been filed**.

. . . .

(5) **The employer or insurer shall make payment and** *providers* **shall submit bills and records in accordance**

22

> **with the provisions of this section**. All payments to providers for treatment provided pursuant to this [A]ct shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided pursuant to paragraph (6). . . .

77 P.S. § 531 (emphasis added). Claimant emphasizes Section 306(f.1)(**1**)(**i**) of the Act, and the Board emphasizes Section 306(f.1)(**5**) of the Act. The Board is incorrect that Claimant is not entitled to payment because he did not "submit bills and records in accordance with the provisions of [] [S]ection [306(f.1)(5) of the Act,]" because Claimant is not a "provider." 77 P.S. § 531(5).[14] Thus, pursuant to Section 306(f.1)(1)(i) of the Act, Claimant need only show that CBD oil is a medicine or supply. *See* 77 P.S. § 531(1)(i).

Claimant contends that nothing in the Act restricts compensable *medicine and supplies* to items which can only be obtained through a pharmacist, nor is there any statutory language prohibiting reimbursement for *medicines and supplies* which can be obtained over the counter. Specifically, Claimant contends that the General Assembly clearly intended the words *medicine and supply* to have a different meaning from *drug*. Further, Claimant asserts this distinction is evidenced by the General Assembly's repeated use of the words *medicine and supply* in Section 306(f.1) of the Act, which sets forth Employer's obligation to pay, and its use of the word *drug* when discussing Medical Cost Containment.[15] Thus, he maintains that the General Assembly knew and intended that the words would have different meanings.

---

[14] The reasoning supporting that Claimant is not a provider is discussed *infra* pp. 29-31.

[15] Section 306(f.1)(3)(vi)(G) of the Act provides: "No outpatient **provider**, other than a pharmacy licensed in this Commonwealth or another state, may seek reimbursement for an over-the-counter **drug**." 77 P.S. § 531(3)(vi)(G) (emphasis added).

Employer rejoins that *supplies* have never been interpreted to include substances that are sold in health food stores without a prescription and that the FDA has determined are not safe or effective for any purpose. In addition, Employer asserts that Section 306(f.1)(1)(i) of the Act does not apply to *medicine and supplies*, as Claimant submits, but, rather, to "reasonable surgical and medical services." 77 P.S. § 531(1)(i). Employer claims that the phrase "medicines and supplies" appears at the end of the first sentence in Section 306(f.1)(1)(i) of the Act and relates back to the phrase "reasonable surgical and medical services" which appears in the beginning of the sentence. *Id.* Therefore, Employer claims that Claimant has misinterpreted the statute.

Here, WCJ DiLorenzo found:

17. [] **Claimant is credible** on the basis of his demeanor during his testimony at a hearing before th[is WCJ]. He's particularly credible that **he uses CBD or [CBD] oil [] every night for sleep after Dr. Murphy's recommendation** of it because **Dr. Murphy substantiated his recommendation of CBD oil with a prescription for it**. He's credible about the prescription of the CBD oil because **it avoided an increased dose of medication and forestalled surgery** because Dr. Murphy's records in evidence aren't indicative of [] Claimant's election for surgery at or about the time of the prescription of the CBD oil or thereafter. He's credible that CBD oil has no harmful side effects because Dr. Murphy's records in evidence aren't indicative of any alleged side effects from [] Claimant's use of it. He's credible about the lack of any need for HCFA . . . forms for the submission of the bills for the CBD oil to [Employer's] [WC] insurance carrier because Dr. Fruncillo established that **CBD oil isn't a drug** and is a "dietary supplement." He's particularly credible about his submission of the receipts for the CBD oil and [Employer's] denial of payment of CBD oil because [Employer's] counsel's statements substantiated [Employer's] counsel's receipts for the CBD oil from [] Claimant and [Employer's] denial of payment for it and

24

because the e[]mail from [] Claimant established the lack of payment.

. . . .

29. **Based on the evidence**, inclusive of the testimony of [] Claimant and statements of Dr. Fruncillo, [] Claimant's **CBD oil is a "supply"** and [] Claimant isn't a "health care provider." Since the basic premise in [WC] matters is that the . . . Act is remedial in nature and intended to benefit the worker, the Act must be liberally construed to effectuate its humanitarian objectives and **the word** "supply" **in the Act is thus liberally construed to include** [] **Claimant's CBD oil**.

R.R. at 178a-179a, 182a (WCJ Dec. at 8-9, 12) (emphasis added).[16]

To the extent the issue before this Court is a mixed question of law and fact, based upon this Court's review, and drawing all reasonable inferences in Claimant's favor on the Penalty Petition, as it must, the credible record evidence supports WCJ DiLorenzo's conclusion that CBD oil is a *supply* for purposes of Section 306(f.1)(1)(i) of the Act.[17]

---

[16] Importantly, the Board's strict reading of Section 306(f.1)(1)(i) of the Act is inconsistent with this Court's holding that the term *medical services* includes travel expenses to and from therapy. *See Harbison-Walker Refractories v. Workmen's Comp. Appeal Bd. (Huntsman)*, 513 A.2d 566 (Pa. Cmwlth. 1986); *see also Roadway Express, Inc.* (this Court held that travel expenses, to and from a pain clinic found necessary to injured employee's treatment, was a reasonable and necessary incident to authorized medical services and, as such, was reimbursable).

[17] Notwithstanding WCJ DiLorenzo's finding that CBD oil is a supply, *see* R.R. at 182a (FOF 29), the Dissent states, without any authority other than the label identifying CBD oil as a dietary supplement, that Claimant's use of CBD oil "is not legal." *Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 11, 23. This statement is completely false. The Dissent appears to equate off-label marketing of a product with purchasing CBD oil which is sold legally. Clearly, the fact that off-label **marketing** is illegal, *see id.*, ___ A.3d at ___, slip op. at 11, does not make Claimant's CBD oil use illegal.

The Dissent further submits that "[i]llegal or off-label uses of products, even on the advice of a doctor, are not necessarily reimbursable under the WC Act, particularly where there may be medical risks associated with the off-label use[,]" *id.*, ___ A.3d at ___, slip op. at 15-16, and cites *New York Marine & General Insurance Co. v. Bureau of Workers' Compensation Medical Fee Review Hearing Office* (Pa. Cmwlth. No. 860 C.D. 2018, filed May 2, 2019); *Barnhart v. Workers'*

To the extent that the issue before this Court is strictly an issue of statutory interpretation, this Court must determine specifically whether CBD oil fits within either the definition of "medicines" or "supplies."[18] 77 P.S. § 531(1)(i).

> When terms are not defined, we turn to the rules of statutory construction, which are applicable to statutes and ordinances alike, for guidance. *Kohl v. New Sewickley [Twp.] Zoning Hearing [Bd.]*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015). "The interpretation of a statute or ordinance presents this Court with a pure question of law, which is generally subject to plenary review." *Id.*
>
> The primary objective of statutory interpretation is to determine the intent of the enacting legislation. Section 1921 of the Statutory Construction Act of 1972 (Statutory Construction Act), 1 Pa.C.S. § 1921. A statute's plain language generally provides the best indication of

---

*Compensation Appeal Board (Tremont Borough)* (Pa. Cmwlth. No. 66 C.D. 2017, filed Aug. 16, 2017); and *Bedford Somerset MHMR v. Workers' Compensation Appeal Board (Turner)*, 51 A.3d 267 (Pa. Cmwlth. 2012), as support for this proposition. *Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 15-16.

However, *New York Marine* involved a petition for review of **a Bureau of Workers' Compensation Medical Fee Review Hearing Office's** (**Bureau**) **order** issued by a Medical Fee Review Hearing Officer; *Barnhart* involved a review of a Board's order affirming a WCJ's decision denying, in part, the **claimant's Petition for Review of UR Determination**; and *Bedford Somerset MHMR* involved a Board's order reversing a WCJ's decision that **denied a petition for review of a UR determination**. Clearly none of these cases denied reimbursement at the penalty petition stage. Instead, reimbursement was questioned at the UR stage, which is the proper forum to argue that the CBD oil is not reasonable and necessary because it is not FDA approved. *See infra* pp. 27-29.

Moreover, WCJ DiLorenzo specifically determined that Dr. Fruncillo "isn't credible and persuasive that [] Claimant's CBD use could potentially cause adverse medical consequences for [] Claimant on the bases of any evidence of [] Claimant's experience of any adverse medical consequences, of the lack of any testimony from [] Claimant about adverse medical consequences with his use of CBD oil, and of the lack of any statements in Dr. Murphy's records about any adverse medical consequences with [] Claimant's use of CBD oil." FOF 18.

[18] The Dissent maintains that the Dissent does not reach this issue because "orally ingested CBD oil was not part of any treatment plan by Claimant's doctor[.]" *Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 19. As discussed above, this reasoning is completely contrary to Dr. Murphy's note, Dr. Murphy's prescription, Claimant's testimony, and WCJ DiLorenzo's findings of fact. *See supra* note 6.

26

> legislative intent, and, therefore, statutory construction. *Uniontown Newspapers, Inc. v.* [*Pa.*] *Dep*[*'t*] *of Corr*[.], . . . 243 A.3d 19, 32 ([Pa.] 2020). "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage." Section 1903 of the Statutory Construction Act, 1 Pa.C.S. § 1903. "Also, where a court needs to define an undefined term, it may consult dictionary definitions for guidance." *THW Gr*[*p.*]*, LLC v. Zoning* [*Bd.*] *of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014).

*Sheppleman v. City of Chester Aggregated Pension Fund*, 271 A.3d 938, 949 (Pa. Cmwlth. 2021).

> As Justice Felix Frankfurter cogently observed, "legislation when not expressed in technical terms is addressed to the common run of men and is therefore to be understood according to the sense of the thing, as the ordinary man has a right to rely on ordinary words addressed to him." *Addison v. Holly Hill Fruit Prod*[*s.*], 322 U.S. 607, 618 . . . (1944). Here, the terms [*medicine*] and [*supply*] are not technical terms which have acquired a peculiar meaning within the context of the [Act], and, thus, we ascertain their meaning in accordance with their common and approved usage. *Sivick* [*v. State Ethics Comm'n*,] 238 A.3d [1250,] 1259 [(Pa. 2020)]. As [the Pennsylvania Supreme] Court has explained, **in determining such usage**, **it is proper to consult dictionaries**. *Bruno v. Erie Ins*[.] *Co.*, . . . 106 A.3d 48, 75 ([Pa.] 2014).

*Greenwood Gaming & Ent., Inc. v. Commonwealth*, 263 A.3d 611, 620 (Pa. 2021) (emphasis added).

Medicine is commonly defined as "a substance or preparation used in treating disease[;] [] something that affects well-being; . . . [] a substance (such as a drug or potion) used to treat something other than disease." Merriam-Webster.com.[19] Similarly, the term "medical supplies" is defined as "[a]ny item that

---

[19] *See* https://www.merriam-webster.com/dictionary/medicine (last visited Nov. 13, 2023).

27

is essential for <u>treating</u> illness or injury." Segens Medical Dictionary (emphasis added).[20] Here, Dr. Murphy prescribed CBD oil to Claimant to treat his pain. *See* WCJ DiLorenzo's FOF 14(a); R.R. at 175a-176a. The CBD oil has benefitted Claimant's well-being by reducing his pain, eliminating his need to increase the use of highly addictive opioid medications, and forestalling expensive and risky surgery. *See* FOF 17, 30; R.R. at 178a-179a, 182a. Accordingly, CBD oil fits within the definitions of "medicines" and "supplies." 77 P.S. § 531(1)(i).

> Employer counters:
>
> This Court has consistently held that **employers and insurers are only responsible for "reasonable and necessary medical treatment**." Indeed, when [WCJ] Stokes granted the Claim Petition for [Claimant], he ordered that [Employer] w[as] responsible for reasonable and necessary medical treatment.
>
> [WCJ] Stokes did not order [Employer] to be responsible for reasonable and necessary medical treatment and herbal remedies bought in health food stores without a prescription. Buying unregulated CBD oil at an unlicensed health food store is not medical treatment, and it is certainly not "medicines and supplies."

Employer Br. at 17 (emphasis added).

However, Employer ignores that "Section 306(f.1)(6) of the [A]ct[,] 77 P.S. § 531(6)[,] provides a UR process, intended as an impartial review of **the reasonableness or necessity of medical treatment** rendered to, or proposed for, work-related injuries and illnesses." Section 127.401(a) of the Pennsylvania DOL's

---

[20] *See* https://medical-dictionary.thefreedictionary.com/medical+supplies (last visited Nov. 13, 2023). "No prior reported case has ever construed the term[] . . . 'supplies' before." *Rieger v. Workmen's Comp. Appeal Bd. (Barnes & Tucker Co.)*, 521 A.2d 84, 86 (Pa. Cmwlth. 1987). Nor has this Court's research uncovered any cases thereafter construing the term *supplies*.

Regulations, 34 Pa. Code § 127.401(a) (emphasis added). If Employer does not believe that CBD oil is a reasonable and necessary medical treatment for Claimant's pain, it has the remedy of submitting that claim to the UR process. *See W&W Contractors, Inc. v. Workers' Comp. Appeal Bd. (Holmes)* (Pa. Cmwlth. No. 836 C.D. 2020, filed June 28, 2021).[21]

Regarding whether CBD oil cannot be a reasonable and necessary medical treatment because it is not FDA approved,[22]

> [whether a treatment is FDA[ ]approved for a particular purpose] should be raised within the framework of the . . . UR[] process under Section 306(f.1)(1)(i) and (6) of the Act, as it is a challenge to the reasonableness and necessity of the treatment. 77 P.S. § 531(1)(i), (6) (requiring employers or insurers to pay for, *inter alia*, reasonable

---

[21] Pennsylvania Rule of Appellate Procedure 126(b) provides: "[U]nreported memorandum opinion[s] of the Commonwealth Court filed after January 15, 2008," are "non-precedential decisions" and "may be cited for their persuasive value." Pa.R.A.P. 126(b). Section 414(a) of this Court's Internal Operating Procedures also states: "An unreported panel decision of this Court issued after January 15, 2008," may be cited "for its persuasive value, but not as binding precedent." 210 Pa. Code § 69.414(a). The unreported cases cited herein are cited for their persuasive value.

[22] Notably, neither the Board nor the Dissent offer legal authority to support their positions that employers need only pay for FDA-approved items, or that the FDA's refusal to approve the *marketing* of an item as a drug or dietary supplement is a basis for an employer to refuse payment and/or for a medicine or supply to be deemed not reasonable and necessary.

The FDA Principal Deputy Commissioner Janet Woodcock, M.D.'s January 26, 2023 statement, relied upon by the Dissent, *see Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 13-15, merely states FDA policy which is "[a] general statement of policy[,] [] the outcome of neither a rulemaking nor an adjudication; it is neither a rule nor a precedent but is merely an announcement to the public of the policy which the agency hopes to implement in future rulemakings or adjudications." *Corman v. Acting Sec'y of Pa. Dep't of Health*, 267 A.3d 561, 574 (Pa. Cmwlth.), *aff'd,* 268 A.3d 1080 (Pa. 2021) (quoting *Pa. Hum. Rels. Comm'n v. Norristown Area Sch. Dist.*, 374 A.2d 671, 679 (Pa. 1977)).

The Dissent also quotes extensively from an ***extra-record*** *January 5, 2022 article, The 'State' of CBD When Added to FDA-Regulated Products, authored* by Daniel C. Rubenstein and published on his Steptoe law firm's website, as authoritative and factual. *See Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 11-13. However, such article is not authoritative and is outside the record.

> medical services provided to a claimant for a work-related injury but allowing for a challenge to the treatment as being not reasonable or necessary through the UR process)[.]

*N. Y. Marine & Gen. Ins. Co. v. Bureau of Workers' Comp. Med. Fee Rev. Hearing Off. (Lam)* (Pa. Cmwlth. No. 860 C.D. 2018, filed May 2, 2019), slip op. at 6. Although not part of the certified record, counsel for both parties acknowledged during oral argument that while this litigation was pending, Employer did in fact submit a UR claim and the reviewer determined that the CBD oil Dr. Murphy prescribed to Claimant was indeed reasonable and necessary.[23] Accordingly, the Board erred by expressly refusing to define whether CBD oil is a *medicine or supply* within the meaning of the Act, and this Court holds that CBD oil is both a *medicine* and a *supply* for purposes of Section 306(f.1)(1)(i) of the Act.

**Claimant is not a Provider**

Claimant next asserts that the Board erred by concluding that a claimant is required to submit the billing forms required of treatment *providers* to obtain reimbursement for the costs of *medicine and supplies* to treat his work injuries. Specifically, Claimant contends that the HCFA forms are only required for providers requesting payment, not employees/claimants. Specifically, Claimant contends that because the terms *provider* and *employee* are defined differently in the Act, claimants are not required to submit HCFA forms in order to obtain reimbursement for their medicine and supply costs from employers. Employer rejoins that the obligation to pay for medical bills caused by a work-related injury does not begin to run until those bills are submitted on the proper medical forms with a monthly medical report.

---

[23] It appears from the discussion *infra* at pages 35 and 36 that decision has been appealed and is currently pending before another WCJ.

Section 306(f.1)(5) of the Act requires: "The employer or insurer shall make payment and **providers** shall submit bills and records in accordance with the provisions of this section." 77 P.S. § 531(5) (emphasis added). Further, Section 127.201 of the Pennsylvania DOL's Regulations mandates:

> (a) Requests for payment of medical bills shall be made either on the HCFA Form 1500 or the UB92 Form (HCFA Form 1450), or any successor forms, required by HCFA for submission of Medicare claims. If HCFA accepts a form for submission of Medicare claims by a certain **provider**, that form shall be acceptable for billing under the [A]ct.

> (b) Cost-based **providers** shall submit a detailed bill including the service codes consistent with the service codes submitted to the [WC] Bureau on the detailed charge master in accordance with [Section 127.155(b) of the [Pennsylvania DOL's] Regulations, 34 Pa. Code] § 127.155(b) (relating to medical fee updates on and after January 1, 1995--outpatient acute care providers, specialty hospitals and other cost-reimbursed providers), or consistent with new service codes added under [Section 127.155(d) and (e) of the [Pennsylvania DOL's] Regulations, 34 Pa. Code] § 127.155(d) and (e).

34 Pa. Code § 127.201 (emphasis added). Section 127.202(a) of the Pennsylvania DOL's Regulations specifies that "[u]ntil **a provider** submits bills on one of the forms specified in [Section] 127.201 [of the Pennsylvania DOL's Regulations] . . . insurers are not required to pay for the treatment billed." 34 Pa. Code § 127.202(a) (emphasis added). Finally, Section 109 of the Act[24] defines "provider" as "a health care provider." 77 P.S. § 29. Accordingly, the clear statutory and regulatory language mandates providers, not employees, to submit bills on specified forms for a billed treatment to be paid.

---

[24] Added by Section 3 of the Act of July 2, 1993, P.L. 190.

Based upon this Court's review, drawing all reasonable inferences in Claimant's favor on the Penalty Petition, as it must, the credible record evidence supports WCJ DiLorenzo's conclusion that Claimant is not a *provider*.[25] Because Claimant is not a health care provider, Section 306(f.1)(5) of the Act and Section 127.201 of the Pennsylvania DOL's Regulations do not apply to him. Consequently, Claimant was not required to submit an HCFA form and/or periodic medical reports in order to receive reimbursement from Employer.[26] Rather, in order to obtain reimbursement, Claimant only had to submit his doctor's prescription for CBD oil to treat the pain caused by his work injury and his receipts therefor, which he did.[27]

---

[25] The Dissent posits that Section 306(f.1)(2) of the WC Act requires that medical reports documenting treatment must be filed **by a provider** within 10 days of commencing treatment and at least once a month thereafter as long as treatment continues. Thus, the Dissent maintains the CBD oil is not eligible for reimbursement because Claimant did not submit reports documenting that CBD oil was part of his medical treatment plan. However, Claimant was not required to submit medical reports because he is not a health care provider. Section 306(f.1)(5) of the Act requires: "The employer or insurer shall make payment and *providers* **shall submit bills and records in accordance with the provisions of this section**." 77 P.S. § 531(5) (italic and bold emphasis added). Because Claimant is not a health care provider, Section 306(f.1)(5) of the Act and Section 127.201 of the Pennsylvania DOL's Regulations do not apply to him. Just as Claimant was not required to submit his request for payment on an HCFA form because he is not a health care provider, Claimant was not required to submit a doctor's report for reimbursement because he is not a health care provider. Accordingly, Claimant submitted his CBD oil prescription and receipts to Employer.

[26] The Dissent spends much of its discussion explaining that it is not only the lack of the proper form that disqualifies Claimant's CBD oil from reimbursement, but also the lack of medical reports. However, Section 306(f.1)(5) of the Act requires: "The employer or insurer shall make payment and **providers shall submit bills *and records*** in accordance with the provisions of this section." 77 P.S. § 531(5) (italic and bold emphasis added). Thus, the same analysis applies. Just as Claimant is not required to submit the HCFA forms because he is not a health care provider, neither is he required to submit medical reports because he is not a health care provider.

[27] Nonetheless, the Dissent states: "It was [Claimant's] *election to self-treat outside his doctor's established plan*, not simply his failure to submit a correct form, that rendered Claimant's reimbursement request noncompliant with the WC Act." *Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 10 (emphasis in original). Again, the Dissent is usurping the role of WCJ DiLorenzo as factfinder by stating that Claimant self-treated. Based on Dr. Murphy's note, Dr. Murphy's prescription, the forestalling of surgery and the lack of increased OxyContin

32

Significantly, in *Fegley v. Firestone Tire & Rubber (Workers' Compensation Appeal Board)*, 291 A.3d 940 (Pa. Cmwlth. 2023), this Court held that the employer was required to reimburse the claimant for medical marijuana after he submitted his prescription and receipts therefor.[28]  Although the issues in *Fegley* were different from the issues herein, both cases are in the identical procedural posture, i.e., both claimants filed penalty petitions against their employers for failing to reimburse them for out-of-pocket expenses used to treat their accepted work injuries, and both claimants submitted prescriptions for their treatment and receipts for their out-of-pocket treatment expenses.  The *Fegley* Court held that employer violated the Act by not reimbursing the claimant.  Accordingly, the Board erred by finding that Claimant was required to submit the type of billing forms and medical

and Oxycodone dosages, and Claimant's credible testimony, the WCJ found that the CBD oil was prescribed, taken as prescribed, and benefited Claimant.  *See* R.R. at 178a-179a (FOF 17); *see also supra* note 6.  The Dissent counters that it did not fact find because it quoted from the Board and portions of the WCJ's findings of fact.  First, the Board is not the fact-finder.  *See Rogele, Inc.* Second, WCJ DiLorenzo's finding that the Dissent refers to incorporates Claimant's Affidavit, wherein he states that he tried both CBD topical and oil treatments and discusses his use of topical lotion.  Nowhere in the record does Dr. Murphy refer to "lotion" or restrict Claimant's CBD use to topical.  The prescription states, "CBD oil/topical[,]" and Dr. Murphy's note recommends that he "try CBD oil."  R.R. at 74a, 82a.  As stated above, WCJ DiLorenzo's findings of fact are replete with references to, and discussion about, Claimant using CBD oil.  *See supra* note 11.

[28] The Dissent states: "*Fegley* does not indicate what documentation the claimant there submitted in seeking reimbursement."  *Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting) slip op. at 10 n.10.  However, given that the penalty petition was filed because the employer therein did not reimburse the claimant for *his out-of-pocket costs for his purchase of medical marijuana*, it is clear the reimbursement was based on the claimant's receipts.  Moreover, a review of the record therein reveals that the claimant did indeed submit his receipts for the medical marijuana (and testified to his doctor's recommendation therefor), and the WCJ made specific findings of fact regarding the same.  The Dissent rejoins that we may not take judicial notice of the record in another case.  However, judicial notice concerns the introduction of evidence.  *See Sluciak v. Cecil Twp. Bd. of Supervisors*, 223 A.3d 725, 731 (Pa. Cmwlth. 2019).  The Majority is not introducing the record in *Fegley* as evidence in the instant case, but rather, it references the record to provide legal precedent that receipts, as opposed to an HCFA form, have been submitted for reimbursement, and this Court held that reimbursement, albeit on other grounds, was proper.

33

reports required of treatment *providers* to obtain reimbursement for the costs of *medicine and supplies* to treat his work injuries.

**Federal Law not Violated**

Claimant next contends that the Board erred by concluding it would violate federal law to direct an insurer to reimburse Claimant for an over-the-counter *dietary supplement*. The Board stated:

> II. Classifying CBD oil as a supply compels employers to violate [f]ederal law[.]
>
> CBD oil cannot be reasonable and necessary medical treatment where **the FDA has issued several warning letters to firms *marketing* CBD products** for violating [f]ederal law, including the [Federal Drug Act]. (Ex. D-01 at 5, 12). As of October 24, 2019, the FDA has not approved a marketing application for cannabis for the treatment of any disease or condition. (*Id*. at 5). The FDA has warned that "[s]**elling unapproved products** [i.e., CBD products marketed to treat diseases or for other therapeutic uses] **with unsubstantiated therapeutic claims is not only a violation of the law**, but also can put patients at risk, as these products have not been proven to be safe or effective." (*Id*.).

R.R. at 202a-203a (italics and emphasis added; footnotes omitted). Employer's Exhibit D-1 upon which the Board relied is an excerpt from the FDA's website entitled "FDA Regulation of Cannabis and Cannabis-Derived Products, Including Cannabidiol (CBD)."[29] It is simply literature from the FDA's website providing consumer information about products containing cannabinoids.

Further, the fact that some firms marketing CBD products may violate federal law, and/or selling approved products with unsubstantiated therapeutic

---

[29] http://www.fda.gov/news-events/public-health-focus/fda-regilation-cannabis-and-cannais-derived-products-including-cannabidiol-cbd (last visited Nov. 13, 2023).

34

claims violates federal law, *does not make Claimant's use or Employer's reimbursement for CBD oil illegal*. There was no record evidence that the CBD oil Claimant used is illegal under federal law. Because the Board is not the fact-finder, any conclusion it made to the contrary exceeded its authority.

> Moreover, this Court has held that where a statute
>
> does not prohibit insurers from covering medical marijuana [(which, as a Schedule I drug, is illegal under federal law)], the [] Act mandates employers to reimburse claimants for out-of-pocket costs of medical treatment which has been found to be reasonable and necessary for their work-related injury, and the WCJ concluded that the medical marijuana use was causally related to the work injury, [**the e**]**mployer is required to reimburse** [**the c**]**laimant for his out-of-pocket costs under the** [] **Act**.

*Appel v. GWC Warranty Corp. (Workers' Comp. Appeal Bd.)*, 291 A.3d 927, 935 (Pa. Cmwlth. 2023) (emphasis omitted; bold emphasis added); *see also Fegley* (employer's failure to reimburse a claimant's out-of-pocket expenses for medical marijuana used to treat his accepted work injury violated the Act). When the employer in *Appel* argued that it could not be compelled to pay for a drug that is illegal under federal law, this Court declared: "[S]ince [the e]mployer is not prescribing marijuana, but rather reimbursing [the c]laimant for his lawful use thereof, the e]mployer is not in violation of [federal law]." *Id*. The *Appel* Court concluded: "[B]ecause [the e]mployer would not be in violation of [federal law] by reimbursing [the c]laimant for his lawful medical marijuana use, and the WCJ concluded that the medical marijuana use was causally related to the work injury, [**the e**]**mployer is required to reimburse** [**the c**]**laimant for his out-of-pocket costs under the WC Act**." *Id*. (emphasis added). Certainly, if employers *must* reimburse employees for their use of a drug Congress has declared *illegal*, the fact that the FDA has merely declared that some firms' *marketing* of CBD oil illegal

cannot be an impediment to employers reimbursing employees when their use of CBD oil is legal and reasonable and necessary treatment of their work-related injury.

The Dissent contends that this case is distinct from *Appel* and *Fegley* because "CBD is not a Schedule I controlled substance under federal criminal law, provided it is chemically within federal specifications[,]" but rather "it is regulated by the FDA if used as a drug,[30] and it also requires FDA premarketing approval for marketing as a dietary supplement[.]" *Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 4. However, as stated by Commissioner Zurick in the Board's Dissent:

> We [] disagree that requiring [Employer] to pay for the CBD would violate federal law. We must note that CBD is not marijuana or medical marijuana and does not fall under the federal restrictions related to those substances. In fact, the warning letters from the FDA, cited by [the Board's] Majority as proof that CBD is illegal under federal law, are related to actions against the *marketing* of CBD, and do not state that CBD itself is illegal or prohibited in any way if marketed correctly. The [Board's M]ajority is purposefully misinterpreting these FDA actions to create the illusion that CBD is on the same level as marijuana and, therefore, illegal. This is simply not the case, and **CBD is lawfully sold over the counter in Pennsylvania and all over the United States**, which is exactly how Claimant obtained it here.

R.R. at 207a n.4 (emphasis added). Consequently, the FDA

> does not prohibit insurers from covering [CBD oil], the [] Act mandates employers to reimburse claimants for out-of-pocket costs of medical treatment which has been found to be reasonable and necessary for their work-related injury, and the WCJ concluded that the [CBD oil] use was causally related to the work injury, **Employer is required**

---

[30] WCJ DiLorenzo expressly found that Dr. Fruncillo was credible and persuasive that CBD oil is not a drug. *See* FOF 18.

36

**to reimburse Claimant for his out-of-pocket costs under the [] Act**.

*Appel*, 291 A.3d at 935 (emphasis added). The fact that Employer did not do so is a violation of the Act.

WCJ DiLorenzo found as facts:

22. [WCJ DiLorenzo] takes judicial notice: "**Under the FECA, the [U.S. DOL's]) . . . OWCP[] may provide to an employee** injured while in the performance of duty, the services, appliances, and **supplies prescribed or recommended by a qualified physician**, **which OWCP considers 'likely to** cure, **give relief**, reduce the degree or the period of disability, or aid in lessening the amount of the monthly compensation." *See*[] FECA . . . Bulletin, No. 17-03, Issue Date March 22, 2017.

23. [WCJ DiLorenzo] takes judicial notice: "In accordance with the discretion granted to [the U.S.] DOL and delegated to OWCP, **OWCP's** . . . DFEC[] **is instituting a new policy for authorizing herbal supplements for work-related illnesses or injuries**." *See*[] FECA . . . Bulletin, No. 17-03, Issue Date March 22, 2017.

. . . .

26. [WCJ DiLorenzo] takes judicial notice that [] 77 P.S. [§] 531(1)(ii) indicates in pertinent part: "In addition to the above service, **the employer shall provide payment for medicines and supplies**, hospital treatment, services and supplies and orthopedic appliances, and prostheses in accordance with this section. . . [.]"

. . . .

29. Based on the evidence, inclusive of the testimony of [] Claimant and statements of Dr. Fruncillo, [] **Claimant's CBD oil is a** "**supply**" and [] Claimant isn't a "health care provider." Since the basic premise in [WC] matters is that the . . . Act is remedial in nature and intended to benefit the worker, **the Act must be liberally construed to effectuate its humanitarian objectives and the word "supply" in the Act is thus liberally construed to include [] Claimant's CBD oil**.

R.R. at 180a-182a (emphasis added).  Accordingly, the Board erred by concluding it would violate federal law to direct an insurer to reimburse a claimant for CBD oil.

**The Board Improperly Focused on 'Possible' Impact to Insurers**

Claimant next argues that the Board erred by theorizing about the effect on insurers if they are required to pay for over-the-counter medicines or supplies, and disregarding the Act's humanitarian objectives regarding Claimant's right to treatment and the goal of enabling injured workers to return to/continue to work. The Board stated: "Adoption of this procedure would open the floodgates for future claimants to present personal receipts for homeopathic remedies to their employer for reimbursement or risk litigation **for failing to follow a procedure that is nowhere mentioned in the Act**."  R.R. at 202a (emphasis added).  Claimant maintains that the Board is referring to its unsupported statement that "Claimant bought the CBD oil apart from any prescription or plan of any health care provider, including Dr. Murphy.  Because it is undisputed that Claimant did not comply with the express provisions of the Act but drafted his own, he did not meet his burden under the Penalty Petition." *Id*.

First, as discussed *supra*, at pages 15 through 17, substantial evidence supports WCJ DiLorenzo's Findings of Fact 13 and 17 that Dr. Murphy prescribed Claimant CBD oil and Claimant used it as directed; thus, CBD oil was part of Dr. Murphy's treatment plan for Claimant.  In addition, as discussed *supra*, at pages 29 through 31, substantial evidence supports WCJ DiLorenzo's Finding of Fact 29 that Claimant is not a provider; therefore, Claimant is not required to use an HCFA form or submit periodic medical reports.  Further, because: (1) a claimant is required to consult with a health care provider, which Claimant did; (2) any form of treatment must be medically reasonable and necessary, which the UR determined herein; and

38

(3) credible evidence is needed to establish the need and relationship to the work injury, as established herein, the floodgates will surely be limited from opening. Moreover, an insurer's ability to file a claim through the UR process to seek UR if the treatment is medically reasonable and necessary further protects the insurer's rights.

> Significantly, this Court has held:
>
> The mere harshness of [a] result [] alone cannot dictate the course of our legal analysis. We emphasize it only because we take seriously this Court's settled recognition that "our basic premise in [WC] matters is that the [Act] is remedial in nature and intended to benefit the worker, and, therefore, **the Act must be liberally construed to effectuate its humanitarian objectives**." *Peterson . . . ,* . . . 597 A.2d [at] 1120 . . . (collecting cases).

*Hannaberry*, 834 A.2d at 528 (emphasis added). Accordingly, the Board erred by theorizing about the effect on insurers if they are required to pay for over-the-counter medicines or supplies, and disregarding the Act's humanitarian objectives regarding Claimant's right to treatment and the goal of enabling injured workers to return to/continue to work.

**The Board Disregarded Claimant's Requested Relief**

Lastly, Claimant asserts that the Board erred by disregarding Claimant's request for a remand to consider after-discovered evidence, namely, the insurer's Petition. Specifically, though not part of the record, in his brief to the Board, Claimant requested that the Board consider after-discovered evidence, or remand the matter to the WCJ to consider said evidence.

WCJ DiLorenzo's decision was issued on April 8, 2020. On May 8, 2020, the insurer filed a UR Request of all of Dr. Murphy's treatment of Claimant. The June 16, 2020 UR Determination found all of Dr. Murphy's treatment, including

39

CBD oil, has been reasonable and necessary. The insurer filed the Petition on June 25, 2020, for review of that determination. Insurer sought to have a new Defense Medical Exam (Exam) performed on July 27, 2020. Claimant did not object to the Exam per se, but did object to its use to support the June 25, 2020 Petition, because it was filed before the Exam had been requested. That litigation (and objection) is still pending before a different WCJ.

Given that the litigation before the WCJ is not final, Claimant sought to have the Board (and now this Court) consider the UR Request, the Face Sheet of the UR Determination, and the insurer's Petition - not for the truth of the opinions expressed therein, but rather, to demonstrate the insurer's efforts to deprive Claimant of any and all means of pain control, contrary to its own expert, Dr. Elia's, opinions. Claimant asserts that the insurer is asserting contrary theories in different disputes: to wit, an injured worker is only entitled to have pharmaceutical drugs paid for by the insurer - even where less expensive and less risky forms of treatment may exist; but even then, the insurer can challenge and dispute its liability to pay for "pharmaceutical drugs," determined to be reasonable and necessary by each of its prior experts, and by the neutral UR Reviewer. Finally, Claimant claims that the documents also reveal the insurer's motives for continuously disputing every form of treatment (in a claim where there has been no lost wages), by filing petitions even before possessing evidence to support the dispute.

Because the issue before this Court is whether WCJ DiLorenzo properly determined that Employer violated the Act by not reimbursing Claimant for his prescribed CBD oil, and WCJ DiLorenzo found that the CBD oil is a supply for which payment is required, a remand to enter evidence to demonstrate what Claimant believes to be the insurer's efforts to deprive Claimant of any and all means of pain control, and what Claimant describes as the insurer's motives for

continuously disputing every form of treatment by filing petitions even before possessing evidence to support the dispute, is not warranted. Accordingly, the Board did not err by disregarding Claimant's request for a remand to consider after-discovered evidence, namely, the insurer's Petition.

## Conclusion

This case involves a Penalty Petition. Thus, Claimant had the burden to prove that Employer violated the Act. Herein, Claimant alleged that Employer violated the Act by not paying for his medical expenses which Dr. Murphy had prescribed to treat his workplace injury. Claimant submitted receipts for his CBD oil to Employer for reimbursement as a supply without a form or other records because Claimant is not a provider. WCJ DiLorenzo *found* that Dr. Murphy prescribed CBD oil to treat Claimant's workplace injury, that CBD oil is a supply for which Employer is responsible to pay under the Act, that Claimant submitted his receipts to Employer for reimbursement, and that Employer did not pay for Claimant's medical treatment as the Act requires. WCJ DiLorenzo's findings are supported by substantial record evidence. Accordingly, neither the Board nor the Court has authority to reweigh the evidence. WCJ DiLorenzo properly concluded that Employer violated the Act.

Keeping in mind that "the . . . Act is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives[,]" *Reifsnyder v. Workers' Comp. Appeal Bd. (Dana Corp.)*, 883 A.2d 537, 541-42 (Pa. 2005) (quoting *Peterson*, 597 A.2d at 1120), and that "[b]orderline interpretations of [the] Act are to be construed in [the] injured party's favor[,]" *id*. (quoting *Hannaberry*, 834 A.2d at 528), this Court reverses the Board's order reversing WCJ DiLorenzo's decision that granted Claimant's Penalty

41

Petition and holds that CBD oil is both a *medicine* and a *supply* for purposes of Section 306(f.1)(1)(i) of the Act.

Further, any argument concerning whether Claimant's CBD oil use is reasonable and necessary is not properly before this Court, as that is an issue to be raised in a UR petition and there is no UR petition currently before this Court. Moreover, FDA approval of a treatment is not a requirement under the Act, and despite that the FDA has not approved some firms' *marketing* of CBD oil as a dietary supplement, its *use* is not otherwise illegal. Notably, the Act does not expressly prohibit Claimant's CBD oil use merely because some firms' illegally marketed CBD oil, and the WCJ *found* that Claimant used the CBD oil use as directed.

This Court holds that the Board erred by: (1) violating the standard of review by disregarding WCJ DiLorenzo's findings of fact and engaging in its own fact finding, in reaching its conclusions, and failing to accord all reasonable inferences to the prevailing party, Claimant herein; (2) expressly refusing to define whether CBD oil is a *medicine or supply* within the meaning of the Act; (3) concluding that a claimant is required to submit the type of billing forms and medical reports required of treatment *providers* to obtain reimbursement for the costs of *medicines and supplies* to treat his work injuries; (4) concluding it would violate federal law to direct an insurer to reimburse Claimant for an over-the-counter *dietary supplement*; and (5) theorizing about the effect on insurers if required to pay for over-the-counter medicines or supplies, and disregarding the Act's humanitarian objectives regarding Claimant's right to treatment and the goal of enabling injured workers to return to/continue to work.

For all of the above reasons, the Board's order is reversed.

_____
ANNE E. COVEY, Judge

42

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark R. Schmidt,              :
        Petitioner         :
                         :
     v.                    :
                         :
Schmidt, Kirifides and Rassias, PC  :
(Workers' Compensation        :
Appeal Board),             :     No. 1039 C.D. 2021
        Respondent     :

## O R D E R

AND NOW, this 14th day of November, 2023, the Workers' Compensation Appeal Board's September 8, 2021 order is reversed.

_____
ANNE E. COVEY, Judge

Mark R. Schmidt, : 
                Petitioner : 
                 : 
                 : 
         v. : 
                 : 
Schmidt, Kirifides and Rassias, PC : 
(Workers' Compensation Appeal : 
Board), :   No. 1039 C.D. 2021
                Respondent :   Argued: November 16, 2022

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE ANNE E. COVEY, Judge
              HONORABLE MICHAEL H. WOJCIK, Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

DISSENTING OPINION
BY JUDGE FIZZANO CANNON              FILED: November 14, 2023

      The legal status of hemp products is in flux. Concurrently with increasing state law legalization of marijuana for medical and even recreational use, other hemp products, such as cannabidiol (CBD), have been decriminalized at both the federal and state levels and are now being widely marketed in a variety of products. There is widespread anecdotal information suggesting that some of these products may have significant value in providing relief to patients suffering from various diseases or injuries, including pain relief that may allow them to reduce or replace the use of opioid pain medications without the addictive properties and other side effects associated with prolonged opioid use. Notwithstanding these promising,

even tantalizing potential benefits, however, the medicinal use of these substances raises important policy and regulatory questions that must be answered by the Legislature, not by this Court.

In this case, the issue is whether a workers' compensation insurance carrier must reimburse a claimant, Mark R. Schmidt (Claimant), for his purchase of CBD oil. Although I agree with the Majority that Claimant is not a health care provider, I do not believe that his non-provider status excused him from submitting proper documentation in order to trigger reimbursement requirements. Moreover, contrary to the Majority's analysis, and for the reasons that follow, I do not believe that CBD oil ingested orally, whether or not prescribed as part of a medical treatment plan, is subject to reimbursement by an employer or its insurer under the current provisions of the Workers' Compensation Act (WC Act).[1] Accordingly, I do not believe an employer can be subject to a penalty under the WC Act for refusing to reimburse a claimant for CBD oil. Therefore, I believe we are constrained to affirm the decision of the WC Appeal Board (Board), and I respectfully dissent.

## I. Introduction

Claimant frames his issues as follows:

Whether the Majority Opinion of the [Board] was in error by:

1. Violating the Standard of Review by extrapolating arguments from [Schmidt, Kirifides and Rassias, PC's (Employer)] brief as 'facts'; rather than relying on the Facts determined by the [WC judge (WCJ)], and failing to accord all reasonable inferences to the prevailing party?

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

2. Expressly refusing to define whether the item at issue is a ["]medicine or supply["] within the meaning of the [WC] Act?

3. Finding that [C]laimant is required to submit the type of billing forms required of treatment ["]Providers["] in order to obtain reimbursement of his own costs to obtain ["]medicine and supplies["] to address his work injuries?

4. Finding it would violate [f]ederal [l]aw to [o]rder an insurer to reimburse [C]laimant for an over-the-counter 'dietary supplement'?

5. Theorizing about the effect on insurers if required to pay for over-the-counter medicine or supplies; and disregarding the [h]umanitarian [o]bjectives of the [WC] Act regarding [C]laimant's right to treatment – and the goal of enabling injured workers to return to/continuing [sic] to work?

6. Disregarding [C]laimant's [r]equest for [remand] to consider after[-]discovered evidence; namely, [Employer's] Petition to Review Utilization Review Determination, seeking to eliminate all of [C]laimant's treatment options?

Claimant's Br. at 4 (emphasis omitted). Claimant's characterization of his arguments is calculated to avoid the legal realities that are applicable to CBD. As discussed below, I conclude that those realities include:

(1) that CBD oil is not approved by the Food and Drug Administration (FDA) for Claimant's intended use;

(2) that, consequently, CBD oil is neither a "medicine" nor a "supply" subject to reimbursement under the WC Act;

(3) that Claimant cannot properly obtain reimbursement for an over-the-counter product that is not part of his doctor's treatment plan, particularly for an off-label use of such product, simply by submitting a store receipt and a prescription that does not match the off-label use; and

(4) that, notwithstanding the benefits Claimant is apparently obtaining from his off-label use of CBD oil, the WC Act's humanitarian goals do not permit this Court to override the plain language of the WC Act, any amendment of which must come from the Legislature.

Notably, this case is distinct from recent cases in this Court addressing reimbursement for prescribed or approved use of medical marijuana. In those cases, the legal issues generally include the effect of the Medical Marijuana Act (MM Act)[2] on reimbursement obligations under the WC Act, as well as whether federal criminal law makes reimbursement for medical marijuana, a Schedule I controlled substance,[3] illegal. *See, e.g.*, *Appel v. GWC Warranty Corp. (Workers' Comp. Appeal Bd.)*, 291 A.3d 927 (Pa. Cmwlth. 2023); *Fegley v. Firestone Tire & Rubber (Workers' Comp. Appeal Bd.)*, 291 A.3d 940 (Pa. Cmwlth. 2023). By contrast, CBD is not a Schedule I controlled substance under federal criminal law, provided it is chemically within federal specifications. *See* 21 U.S.C. § 812(c) (list of federal Schedule I controlled substances, which does not include CBD); *see also* 28 Pa. Code § 25.72 (list of controlled substances, which does not include CBD).

CBD oil is a hemp-based product sold as a dietary supplement that Claimant uses orally under his tongue for pain relief. However, it is regulated by the FDA if used as a drug, and it also requires FDA premarketing approval for marketing as a dietary supplement, *which approval has not been given. See In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 102 (E.D.N.Y. 2021) (citing the FDA's website and explaining that "CBD products cannot be sold as dietary

---

[2] Act of April 17, 2016, P.L. 84, *as amended*, 35 P.S. §§ 10231.101-10231.2110.

[3] 21 U.S.C. § 812(c)(10).

CFC - 4

supplements and . . . it is illegal to sell a food (including any animal food) to which CBD has been added").

Notwithstanding the absence of FDA approval for use in foods, various CBD products are sold freely on the internet and in natural food stores. This raises the issue of whether such products can be deemed "supplies" requiring reimbursement under Section 306(f.1)(1)(i) of the WC Act, 77 P.S. § 531(1)(i), particularly where, as here, they are purchased unilaterally by a claimant outside his doctor's medical treatment plan.[4]

Employer is a law firm, and Claimant is a WC claimants' attorney who himself sustained a work-related injury to his back. Br. of Pet'r at 1 & 5. He freely admits that he is pursuing this case for himself only to a small degree; his main purpose is to advance the development of case law on the issue of WC reimbursement for CBD products. *See id.* at 6.

After his injury, in an effort to avoid increasing his use of prescription opiates for pain relief, Claimant tried CBD products. Br. of Pet'r at 6. His doctor "prescribed" topical CBD, an over-the-counter product. *Id.* at 6-7. Claimant bought both CBD topical lotion and CBD dietary supplement oil[5] at a specialty/natural foods store. *Id.* He tried using the lotion topically for a couple of weeks, then switched to

---

[4] As explained below, the doctor's prescription cannot reasonably be interpreted as authorizing oral use of CBD oil, and the WCJ did not so interpret it.

[5] The Majority suggests that the Dissent is improperly bringing the concept of a CBD "lotion" into the case where it is not in the record. The record does indicate that Claimant purchased both lotion and oil, tried the lotion topically and the oil orally, and felt he got more benefit from ingesting the oil. However, I do not suggest that Claimant was specifically prescribed lotion rather than oil. It is clear that oil, not lotion, is at issue in this case, and this opinion does not state or imply otherwise. Rather, the point is that Claimant was prescribed CBD for topical use, *see* Appendix, but instead ingested it orally.

CFC - 5

using the oil orally under his tongue. *Id.* He felt that ingesting the oil was more effective at controlling his pain than topical application of the lotion. *Id.* at 6.

Claimant submitted his purchase receipts to Employer's defense counsel[6] for reimbursement. Reproduced Record (RR) at 94a; Br. of Pet'r at 6. Claimant did not provide any medical reports documenting the oral use of CBD oil as a part of his doctor's treatment plan. Employer refused to pay for the CBD oil. Br. of Pet'r at 6; *see also id.* at 6-7 (acknowledging that Claimant's doctor provided a prescription recommending *topical* CBD). Claimant then filed the instant penalty petition against Employer.

The WCJ concluded that the CBD oil was a "supply" subject to reimbursement under the WC Act "even if not an actual part of [Claimant's] treatment . . . . " WCJ Dec., Apr. 8, 2020 (WCJ Dec.), at 12. However, the WCJ found Employer's contest was reasonable; in the exercise of her discretion, the WCJ declined to impose any penalty against Employer. *Id.* at 12-13.

Employer appealed to the Board, arguing that the WCJ erred in concluding that CBD oil was a "supply" under the WC Act. Bd. Dec., Sept. 8, 2021 (Bd. Dec.), at 2. The Board reversed the WCJ's decision on two bases.

First, the Board determined there was no need to reach the question of whether CBD dietary supplement oil was a "supply" under the WC Act because Claimant did not comply with the legal requirements for submitting a reimbursement claim so as to trigger Employer's duty to pay. Bd. Dec. at 5. The Board explained that an employer has no duty to pay medical bills for a claimant's treatment until those bills are submitted on the proper medical forms with a monthly medical report. *See id.* at 6-8 & n.4 (first citing Section 306(f.1)(2) & (5) of the WC Act, 77 P.S.

---

[6] Employer and its insurer are jointly referred to as Employer herein.

§ 531(2) & (5); then citing 34 Pa. Code §§ 127.201 & 127.202; and then citing *Westinghouse Elec. Corp./CBS v. Workers' Comp. Appeal Bd. (Burger)*, 838 A.2d 831, 839 (Pa. Cmwlth. 2003)). The Board observed that the WCJ found Claimant is not a health care provider and the CBD dietary supplement oil was not part of his doctor's plan of treatment.[7] Bd. Dec. at 8. Instead, Claimant purchased the oral CBD oil on his own, "apart from any prescription or plan of any health care provider," including his treating doctor. *Id.* at 9. In the absence of the requisite supporting medical reports, Claimant did not properly submit his reimbursement requests so as to trigger Employer's duty to pay. *Id.*

Second, the Board opined that "CBD oil cannot be reasonable and necessary medical treatment or supplies under the [WC] Act as the FDA has concluded that it has not been proven safe or effective." Bd. Dec. at 5. The Board cited FDA warning letters stating that therapeutic claims associated with CBD are unsubstantiated and that marketing CBD for therapeutic use "is not only a violation of the law, but also can put patients at risk, as these products have not been proven to be safe or effective."[8] *Id.* at 10 (quoting Ex. D-01 at 5). The Board concluded:

> Based on the stated position and recent actions of the FDA, an insurer or employer cannot be required to pay for cannabis or cannabis-derived products, including . . . CBD. Therefore, Employer's failure to reimburse Claimant for his CBD oil expenses used to treat his work injuries is not a violation of the [WC] Act, and the [p]enalty [p]etition should have been denied. Finding a violation

---

[7] The WCJ's decision does not include an express finding that Claimant's oral use of CBD oil was not part of his treatment plan. However, as discussed below, the WCJ did find Claimant's doctor credible that the prescription was for topical use. Thus, the Board's inference, while not precisely correct, was not unreasonable, nor was it contrary to the WCJ's findings.

[8] Although the WCJ found Claimant and one of his experts credible in denying any adverse side effects of oral CBD oil use, the Board was not required to credit that as a finding of fact, in the face of the FDA's official position to the contrary, as quoted at further length below.

here is concomitant to compelling an employer to violate [f]ederal law.

Bd. Dec. at 10.

Claimant then petitioned for review in this Court.

## II. Discussion

Claimant's brief has almost no citations to authority and consists largely of policy arguments about why Claimant believes WC carriers should have to pay for over-the-counter remedies such as CBD products. However, it is not this Court's function to establish public policy. Here, Claimant purchased and used the CBD oil for a purpose not approved by the FDA, which has not authorized the sale of CBD oil either as a dietary supplement or for oral use to relieve pain. Neither was Claimant's oral use of dietary CBD oil within the treatment plan created by his doctor. For both of these reasons, reimbursement under the WC Act for such a purchase is not proper or legally required.

## A. Requisite Form of Submission by Non-Providers

Claimant first asserts that he was not subject to the formal statutory requirements for submission of medical bills because those requirements apply only to a "health care provider." As defined in Section 109 of the WC Act, a

> "[h]ealth care provider" means any person, corporation, facility or institution licensed or otherwise authorized by the Commonwealth to provide health care services, including, but not limited to, any physician, coordinated care organization, hospital, health care facility, dentist, nurse, optometrist, podiatrist, physical therapist, psychologist, chiropractor or pharmacist and an officer, employe[e] or agent of such person acting in the course and scope of employment or agency related to health care services.

CFC - 8

77 P.S. § 29. Plainly, Claimant is not a health care provider. However, he mischaracterizes the filing requirement for reimbursement, as well as the Board's analysis.

> Section 306(f.1)(5) of the WC Act provides:
>
> The employer or insurer shall make payment and providers shall submit bills and records in accordance with the provisions of this section. All payments to providers for treatment provided pursuant to this act shall be made within thirty (30) days of receipt of such bills and records unless the employer or insurer disputes the reasonableness or necessity of the treatment provided . . . .

77 P.S. § 531(5). Although the Board stated that "a provider must submit the bills on the proper form,"[9] the Board's conclusion that Claimant failed to meet formal submission requirements was not based merely on a technical failure to use the correct form. Rather, as the Board observed, "[a]lthough Claimant has had a prescription for topical CBD oil since April 8, 2019, he bought CBD oil for oral consumption over the counter from specialty natural remedy stores and gave the receipts to defense counsel." Bd. Dec. at 8 (citing WCJ Finding of Fact (FF) 10 & Ex. C-04). Claimant fails to explain how this constituted even substantial compliance with submission requirements.

As the Board correctly explained, Section 306(f.1)(2) of the WC Act requires that medical reports documenting treatment must be filed by a provider "within ten (10) days of commencing treatment and at least once a month thereafter as long as treatment continues. The employer shall not be liable to pay for such treatment until a report has been filed." Bd. Dec. at 9 (quoting 77 P.S. § 531(2)) (additional quotation marks omitted). Thus, even where a claimant is purchasing

---

[9] Bd. Dec. at 7.

drugs, medicine, or supplies over the counter, those purchases must relate to a doctor's treatment plan, which must be substantiated by a medical report, in order to be eligible for reimbursement. Claimant's proposed construction of the WC Act would allow him, or any other claimant, to seek reimbursement for any unprescribed substance, without FDA approval of the substance as safe and effective, without a medical prescription, and without any supporting documentation that the substance was approved by a treating doctor as part of a treatment plan – in other words, with no support whatsoever other than a purchase receipt from a food store.[10] Thus, Claimant advances a patently absurd construction of the WC Act.

---

[10] As discussed further below, I acknowledge the record evidence that Claimant's doctor prescribed topical CBD to Claimant. However, the issue here relates to Claimant's attempt to obtain reimbursement by simply submitting his purchase receipts and prescription to Employer's insurer without sufficient supporting medical documentation that the use he is making of the CBD oil is part of his doctor's treatment plan. *See* RR at 94a & 98a-99a (Claimant, testifying that he sought reimbursement by submitting the purchase receipts and prescription to Employer). The insufficiency of such reimbursement request documentation is a major issue in this case.

The Majority cites *Fegley v. Firestone Tire & Rubber (Workers' Compensation Appeal Board)*, 291 A.3d 940 (Pa. Cmwlth. 2023), for the proposition that submission of a prescription and a purchase receipt will suffice to trigger an obligation for reimbursement. I respectfully disagree that *Fegley* stands for such a proposition. *Fegley* involved a prescription for medical marijuana. The issue was whether the legalization of medical marijuana under Pennsylvania law required WC insurers to pay for it, not whether a prescription and a receipt would suffice to trigger reimbursement. Indeed, *Fegley* does not indicate what documentation the claimant there submitted in seeking reimbursement. (Although the Majority notes that the underlying agency record in *Fegley* indicates the claimant submitted receipts, their sufficiency to trigger reimbursement was not at issue in our opinion on appeal. Further, we may not take judicial notice of the record in another case. *Sluciak v. Cecil Twp. Bd. of Supervisors*, 223 A.3d 725, 731 (Pa. Cmwlth. 2019) (explaining that "[t]he scope of judicial notice does not extend to the evidentiary record of another case, even though the case arose in the same court . . . ") (first citing *Commonwealth ex rel. Ferguson v. Ball*, 121 A. 191, 192 (Pa. 1923); and then citing *Acorn Club of Swissvale, Inc. v. Pa. Liquor Control Bd.*, 500 A.2d 1296, 1297 (Pa. Cmwlth. 1985)). Notably, even if citation of the record in *Fegley* were proper, the WCJ in *Fegley* observed that there was no evidence explaining what items the claimant had purchased as reflected in the receipts, thus implicitly calling into question the sufficiency of those receipts.) Moreover, *Fegley* was distinguishable from this case in two critical ways. First, unlike CBD oil used orally, the medical marijuana in *Fegley* could

Here, Claimant was prescribed CBD for topical use, but admittedly purchased instead a form of CBD oil marketed as a dietary supplement and ingested it orally. *See* Br. of Pet'r at 6-7. As the Board correctly observed, Claimant purchased the CBD oil "apart from any prescription or plan of any health care provider, including" his prescribing doctor. Bd. Dec. at 9. It was *that election to self-treat outside his doctor's established plan*, not simply his failure to submit a correct form, that rendered Claimant's reimbursement request noncompliant with submission requirements of the WC Act.[11] His status as a non-provider highlights, rather than excuses, that noncompliance. Thus, the Board was correct in determining that Claimant did not submit the documentation required in order to seek reimbursement for the cost of CBD oil.

## B. Current Legal Status of CBD

Critically, CBD oil, as used by Claimant here, is *not a drug*, *but a dietary supplement*; *the product label expressly designates it as such*. RR at 170a. Thus, Claimant's attempt to characterize CBD as a "remedy" or "medicine"[12] is contrary to the manufacturer's labeling, and sale of the product for such a use is not

---

legally be prescribed in Pennsylvania for the use the claimant made of it. Second, unlike the CBD oil here, the marijuana in *Fegley* was actually prescribed for the use the claimant made of it.

I also observe that Congress, by withholding funding, has indicated that no federal funds may be expended to prevent states from implementing laws legalizing medical marijuana. *See Fegley*, 291 A.3d at 946 (citing Pub. L. No. 116-260, § 531, 134 Stat. 1182, 1282-83 (2020)). By contrast, the FDA has repeatedly stressed that it has not approved marketing and sales of CBD for other than topical use and that it intends to monitor and take action against unauthorized marketing and sales. *See* Janet Woodcock, M.D., *FDA Statement* (Jan. 26, 2023), https://www.fda.gov/news-events/press-announcements/fda-concludes-existing-regulatory-frameworks-foods-and-supplements-are-not-appropriate-cannabidiol (last visited Nov. 13, 2023).

[11] The WCJ's findings of fact in this regard are discussed below.

[12] *See* Br. of Pet'r at 19-20.

approved by the FDA and is not legal.[13]  *Clark v. Pfizer, Inc.*, 990 A.2d 17, 21 n.1 (Pa. Super. 2010) (noting that "off-label marketing is illegal") (additional citation omitted).

Claimant argues, without citation to authority, that because CBD oil is not medical marijuana, it is completely legal and not regulated by the FDA except in some non-binding consumer advisories.  Br. of Pet'r at 1, 5 n.1, 8, 12 & 23. Claimant acknowledges, however, that CBD oil cannot be *marketed* for medical use. *See id.* at 8.  Nonetheless, he counters that the consumer can still choose to *use* it for any purpose.  *See id.*  This assertion does not advance Claimant's argument.  How a consumer may choose to use – or, stated more accurately, misuse – a CBD product is a different question from whether a WC carrier must pay for that product.  As discussed below, CBD oil cannot be marketed legally as a dietary supplement and, therefore, is not subject to reimbursement by Employer.[14]

Both marijuana and hemp are in the cannabis sativa plant family.  *See* Daniel C. Rubenstein, *The 'State' of CBD when Added to FDA-Regulated Products* (1/5/22) (hereinafter *'State' of CBD*) at 1 (citing the Agriculture Improvement Act of 2018 (2018 Farm Bill), Pub. L. 115-334, §§ 10113-10114, 7 U.S.C. §§ 1639o-1639s (115th Cong.)).[15]  The relevant difference between the two is that, in general,

---

[13] For this reason, I also disagree with the Concurrence's suggestion that CBD is a "medicine" although not a "supply."

[14] Moreover, I am not persuaded by Claimant's hair-splitting argument that he may legally purchase and use a product that may not be legally marketed, such as orally ingestible CBD oil. However, this opinion assumes, *arguendo*, that Claimant's argument is correct.

[15] The Majority criticizes the Dissent's "extra-record" citation of this online article. However, the cited article is not extra-record evidence.  It is secondary legal authority.  That it is published on a law firm's website instead of in a law review or other independent legal publication may affect its persuasiveness in the eyes of the Majority, but it does not alter its character as legal analysis regarding the current state of this emerging area of the law.  To the extent that it includes

marijuana contains much higher levels of the psychoactive agent delta-9 tetrahydrocannabinol (THC), while hemp contains much higher levels of a different substance, CBD. *See 'State' of CBD* at 2. The 2018 Farm Bill amended the statutory definition of marijuana to exclude hemp, thus removing hemp from the list of Schedule I controlled substances under federal law. *See id.* at 1. The 2018 Farm Bill made hemp containing less than 0.3% THC legal in all 50 states, although individual states may enact more restrictive laws. *See id.* at 2. Hemp-derived CBD has become popular in the marketplace since 2018 in a variety of forms for ingestion, inhalation, and topical application, and for a variety of purposes, including calming effects and pain relief. *See id.* at 1. Notwithstanding its increasing popularity and potential off-label use, however, not all forms and uses of CBD are legal.

Products containing CBD are within the FDA's regulatory jurisdiction, regardless of individual state laws. *See 'State' of CBD* at 2-3. Only one substance containing CBD, marketed under the trade name Epidiolex, is FDA-approved as a drug; it is used to treat seizures. *See id.* at 3. Three products containing hemp seed derivatives are classified by the FDA as Generally Recognized as Safe (GRAS) as additives to food. *See id.* In addition, products containing CBD that are classified as cosmetics can generally be marketed without FDA approval. *See id.* However, marketing of *CBD as a dietary supplement requires premarket approval* from the FDA. *See id.* Accordingly,

> a significant portion of any legal analysis regarding the suitable status of a hemp-derived CBD product – particularly consumer products sold at retail – necessarily relies on the scope and breadth of claims made on product advertising and labeling. Products that are intended to be

---

any "facts" mentioned here, they are merely by way of background and context. They are not cited as evidence.

sold at retail as cosmetics may contain certain claims that cause the product to become an unapproved drug, dietary supplement, or a misbranded food for purposes of [the] FDA's existing regulatory authority.

*Id.* Similarly, "individuals should exercise caution when purchasing and consuming CBD-containing products that may be widely available – but may not yet be authorized at the federal or state level." *Id.* at 6.

Following the enactment of the 2018 Farm Bill, since at least March 2020, the FDA's general position has consistently been that "[i]t is *currently illegal to market CBD by adding it to a food or labeling it as a dietary supplement*." FDA, *What You Need to Know (And What We're Working to Find Out) About Products Containing Cannabis or Cannabis-Derived Compounds, Including CBD*, available at https://www.fda.gov/consumers/consumer-updates/what-you-need-know-and-what-were-working-find-out-about-products-containing-cannabis-or-cannabis (emphasis added) (last visited Nov. 13, 2023). That position has not changed. On January 26, 2023, the FDA released a Statement prepared by Janet Woodcock, M.D., Principal Deputy Commissioner of the FDA (*FDA Statement*), which explained:

> Given the growing []CBD[] products market, the [FDA] convened a high-level internal working group to explore potential regulatory pathways for CBD products . . . . [A]fter careful review, the FDA has concluded that a new regulatory pathway for CBD is needed that balances individuals' desire for access to CBD products with the regulatory oversight needed to manage risks. The agency is prepared to work with Congress on this matter. Today, *we are also denying three citizen petitions that had asked the agency to conduct rulemaking to allow the marketing of CBD products as dietary supplements.*
>
> *The use of CBD raises various safety concerns, especially with long-term use. Studies have shown the potential for harm to the liver, interactions with certain medications and possible harm to the male reproductive system. CBD*

*exposure is also concerning when it comes to certain vulnerable populations such as children and those who are pregnant.*

A new regulatory pathway would benefit consumers by providing safeguards and oversight to manage and minimize risks related to CBD products. Some risk management tools could include clear labels, prevention of contaminants, CBD content limits, and measures, such as minimum purchase age, to mitigate the risk of ingestion by children. In addition, a new pathway could provide access and oversight for certain CBD-containing products for animals.

The FDA's existing foods and dietary supplement authorities provide only limited tools for managing many of the risks associated with CBD products. *Under the law, any substance, including CBD, must meet specific safety standards to be lawfully marketed as a dietary supplement or food additive.*

The working group . . . has closely examined studies related to the CBD-based drug Epidiolex, published scientific literature, information submitted to a public docket, as well as studies both conducted and commissioned by the agency. *Given the available evidence, it is not apparent how CBD products could meet safety standards for dietary supplements or food additives. For example, we have not found adequate evidence to determine how much CBD can be consumed, and for how long, before causing harm. Therefore, we do not intend to pursue rulemaking allowing the use of CBD in dietary supplements or conventional foods.*

. . . .

*The FDA will continue to take action against CBD and other cannabis-derived products to protect the public*, in coordination with state regulatory partners, when appropriate. *We will remain diligent in monitoring the marketplace, identifying products that pose risks and acting within our authorities.* The FDA looks forward to working with Congress to develop a cross-agency strategy

for the regulation of these products to protect the public's health and safety.

*FDA Statement* (emphasis added) (last visited Nov. 13, 2023). Thus, the FDA continues to refuse approval for the marketing of CBD in products for oral consumption.[16]

Here, Claimant purchased CBD lotion and CBD oil at a specialty foods store. There is no dispute that CBD is not approved by the FDA for marketing as a drug, except as used in Epidiolex, which is not at issue here. CBD likewise is not approved for marketing as a dietary supplement without premarket approval by the FDA, as discussed above. Claimant does not assert that CBD is a food additive or that it is approved for marketing as such. However, the CBD oil at issue here is labeled as a dietary supplement, and Claimant ingested it by placing it under his tongue. Moreover, he did so for pain relief. Whether Claimant is deemed to have used the CBD as a drug, a medicine, any other form of remedy, or merely as a dietary supplement, marketing CBD for any such purpose is not legal in the absence of FDA premarket approval. As detailed above, the FDA has recently reconfirmed its denial of such approval.

As noted earlier, Claimant posits that regardless of how CBD oil is allowed to be *marketed*, he may legally *use* it for any purpose. That does not mean, however, that Employer must pay for it. Illegal or off-label uses of products, even on the advice of a doctor, are not necessarily reimbursable under the WC Act, particularly where there may be medical risks associated with the off-label use. *See,*

---

[16] The Majority asserts that the written statement of the FDA's Principal Deputy Commissioner, which explains that the FDA has refused to approve CBD for sale as a dietary supplement, is not a rule, but merely an announcement of policy. Respectfully, this is a backwards view of the FDA's statement. The absence of a rule approving CBD as a dietary supplement does not mean that it is legal to sell it for that purpose. It means the opposite.

*e.g.*, *N.Y. Marine & Gen. Ins. Co. v. Bureau of Workers' Comp. Med. Fee Rev. Hearing Off.* (Pa. Cmwlth., No. 860 C.D. 2018, filed May 2, 2019) (an assertion that a treatment is not FDA approved is relevant to liability for reimbursement); *Barnhart v. Workers' Comp. Appeal Bd. (Tremont Borough)* (Pa. Cmwlth., No. 66 C.D. 2017, filed Aug. 16, 2017) (off-label use of medication was not reasonable or necessary, where medication was approved to treat obstructive sleep apnea hypopnea syndrome, narcolepsy, or shift work sleep disorder, but the claimant used it to counteract daytime somnolence caused by his opioid pain medications, a use not approved by the FDA); *Bedford Somerset MHMR v. Workers' Comp. Appeal Bd. (Turner)* (Pa. Cmwlth., No. 1997 C.D. 2011, filed June 6, 2011) (off-label use of Fentanyl lozenges for chronic pain from back injury was not reasonable and necessary where the medication was FDA approved only for treating cancer and AIDS due to its highly addictive nature).[17]

This writing expresses no opinion as to the medical efficacy of CBD products, and as noted below, the WCJ was persuaded by the opinion of Claimant's medical expert that CBD does not have known side effects. As detailed above, however, the FDA specifically cautions that there is no medical evidence of the efficacy of CBD products as pain remedies and that there may be unknown harmful effects associated with the use of CBD. *See FDA Statement*; Bd. Dec. at 10 (quoting Ex. D-01 at 5). Employer's medical expert expressed the same opinion. *See* WCJ Dec. at 6-7, FF 15(b)-(f).

Claimant insists that his doctor recommended the use of CBD. However, Claimant's treating doctor prescribed *topical* CBD in April 2019. RR at

_____

[17] These unreported opinions are cited as persuasive authorities pursuant to Section 414(a) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(a).

74a, attached as the Appendix to this opinion. The record uniformly supports the Board's observation that Claimant's doctor recommended *only topical* use of CBD. Bd. Dec. at 3. The Board relied expressly on the undisputed evidence of record in stating that Claimant's use of CBD oil was outside his treatment plan. Although both the Majority and the Concurrence construe the prescription's specification of "CBD oil/topical" as allowing Claimant to choose between topical and oral use, that interpretation is belied by the prescription form itself, which instructed the patient to "[a]pply to affected area PRN as directed . . . ."[18] RR at 74a (emphasis added). The "affected area" was undisputedly Claimant's low back, not the area under his tongue. The doctor's notes do not indicate he was even aware that Claimant was using the CBD oil orally rather than as prescribed. *See, e.g.*, RR at 79a (October 2019 office notes, listing Claimant's medications and *not* listing or otherwise referencing Claimant's use of CBD), 80a (listing prescription refills to be provided, and *not* listing CBD). Thus, I disagree with the Concurrence's position that the prescription's meaning should be interpreted with reference to Claimant's subsequent action in choosing to ingest the CBD oil.[19] The record contains absolutely nothing to support an interpretation of either the prescription or the contemplation of Claimant's doctor as relating to other than topical use of CBD.

Critically, *the WCJ made no finding to the contrary*. The portions of the WCJ's findings of fact quoted by the Majority constitute the WCJ's summary of the testimony provided, not findings accepting that testimony as true. *See Schmidt*

---

[18] "PRN" is an acronym of the Latin *pro re nata*, meaning "as needed." *See* https://www.stpaulsschoolofnursing.edu/blog/nursing/what-is-a-prn-and-why-should-i-consider-it-.html (last visited Nov. 13, 2023).

[19] This is further emphasized by the fact that, as discussed above, CBD cannot legally be prescribed for oral ingestion because the FDA has expressly refused to approve it for that purpose.

*v. Schmidt, Kirifides and Rassias, PC (Workers' Comp. Appeal Bd.)*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 1039 C.D. 2021, filed Nov. 14, 2023) (Maj. Op.), slip op. at 4-6, 14-15 & 17 (quoting the WCJ's summaries of Claimant's testimony and affidavit and the contents of the records and statements of the medical witnesses). The WCJ did find Claimant credible in stating, *inter alia*, that he uses CBD oil for sleep, that his doctor prescribed CBD oil, that his use of CBD oil has allowed him to avoid surgery or increased pain medication, and that he has not suffered any side effects from his use of CBD oil. *See id.*, ___A.3d at ___, slip op. at 7 (quoting WCJ's credibility findings). However, the WCJ did not state *either in her summary of testimony or in her credibility determinations* that Claimant's doctor prescribed the *oral* use of CBD oil for pain relief.[20] *See generally* WCJ Dec. Indeed, in her summary of the doctor's records, the WCJ observed that "Dr. Murphy prescribed CBD oil/*topical application for* [] *Claimant's affected area . . . ,*" merely echoing the doctor's language on the prescription form. Maj. Op., ___ A.3d at ___, slip op. at 6 (quoting WCJ Dec., FF 14(a) (emphasis added)).

I acknowledge the WCJ's credibility findings concerning the benefits Claimant maintains he has received from his use of CBD oil. However, I reiterate that the pertinent legal issue is not whether Claimant obtains pain relief from ingesting CBD oil, but rather, whether such a use, which is both off-label and not

---

[20] The Majority posits that the WCJ must have been referring to oral use of CBD at some points in her decision, notably where the WCJ observed that Claimant used both CBD lotion and oil according to the package instructions. However, whether Claimant followed package instructions is irrelevant. The simple and unalterable truth is that Claimant's doctor did not prescribe CBD oil for oral use, *and the WCJ made no finding that he did*.

Moreover, had the WCJ made such a finding, it would have been without substantial evidentiary support in the record. That this opinion points out the absence of such evidence does not mean that this opinion is itself making findings of fact.

approved by the FDA, and which was not included in his doctor's treatment plan,[21] is subject to reimbursement by Employer under the WC Act. The Board did not err in denying reimbursement for Claimant's oral use of CBD oil.

Further, even had Claimant's doctor recommended Claimant's oral use of CBD oil, a doctor's prescription or recommendation for use of a product that is not subject to reimbursement under the WC Act cannot alter the product's non-reimbursable status so as to force the employer to pay for it. *See, e.g.*, *Boleratz v. Workers' Comp. Appeal Bd. (Airgas, Inc.)*, 932 A.2d 1014 (Pa. Cmwlth. 2007) (employer was not required to reimburse the claimant for therapeutic massage provided by unlicensed massage therapist, even though the massage therapy was prescribed by the claimant's doctor). Thus, even if the Board's decision were incorrect in stating that the CBD was not prescribed as Claimant used it, Claimant still would not be entitled to reimbursement. For these reasons, I would affirm the Board's reversal of the WCJ's decision regarding reimbursement for the cost of CBD oil.

### C. Definition of "Supplies" under the WC Act

Claimant suggests, and the Majority agrees, that CBD oil may be subject to reimbursement as a "supply" under the WC Act. *See* Br. of Pet'r at 18 & 26. Claimant asserts that the Board improperly failed to determine whether the definition of "supplies" includes CBD oil purchased at a specialty food store. *Id.* at 4. Respectfully, I believe the Board was correct in concluding that it did not need to address that issue.

---

[21] I note further that although Claimant's doctor recommended that he try *topical* CBD, the doctor did not include *any form* of CBD in his written treatment plan. *See* RR at 80a.

Section 306(f.1)(1)(i) of the WC Act requires, in pertinent part, that "[t]he employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, medicines and supplies . . . ." 77 P.S. § 531(1)(i). Claimant contends that CBD oil can be either a "medicine" or a "supply" within the meaning of the WC Act. The WCJ found as a fact that CBD oil is not a drug, but a dietary supplement. *See* Maj. Op., ___ A.3d at ___, slip op. at 7 (quoting WCJ's credibility findings accepting testimony that CBD oil is a dietary supplement as opposed to a drug, based on the product label).

The Majority posits, in agreement with Claimant, that CBD oil constitutes a "supply." However, neither the definition of "medicine" or "supply" comes into play here because, as explained in the previous section, orally ingested CBD oil was not part of any treatment plan by Claimant's doctor, nor could it properly have been, as *it is not approved by the FDA for oral use, even as a dietary supplement, much less for pain relief*. Therefore, it does not matter whether CBD oil does or does not fall within the statutory definition of "supplies" that would otherwise be subject to reimbursement. Accordingly, the Board did not need to address that issue.

Moreover, if the Board had considered the issue, I believe the correct conclusion would have been that CBD oil is not a "supply" subject to reimbursement by a WC insurer. CBD is arguably unique in its present status, because of its widespread popular reputation as a pain reliever. However, I must emphasize again that its pain-relieving properties *are currently anecdotal*, in that they are not supported by any science currently accepted by the FDA. Federal and state

authorities may be frustratingly slow in responding to what appears to be a growing body of information supporting the medicinal value of CBD, particularly in the midst of the current opioid crisis. Nevertheless, I reiterate that it is the function of the Legislature, not this Court, to decide whether WC claimants should be entitled to reimbursement for CBD in its present circumstances.

The WC Act requires an employer to pay for, *inter alia*, "medicines and supplies" and "services and supplies" necessitated by a claimant's work injury. 77 P.S. § 531(1)(i) & (ii). I am not aware of any court decision addressing the status of CBD oil as a "supply" under any state's WC law. I am likewise not aware of any court decision exploring the definition of "supplies" under the WC Act. However, in *Workers' Compensation Security Fund v. Bureau of Workers' Compensation, Fee Review Hearing Office (Scomed Supply, Inc.)*, 195 A.3d 332 (Pa. Cmwlth. 2019), we concluded that "supplies" subject to reimbursement included replacement lead wires for a neuromuscular electrical stimulation (NMES) device prescribed to a WC claimant. *Id.* at 332; *see also Bond Med. Servs. v. Bureau of Workers' Comp. Fee Rev. Hearing Off. (Travelers Cas. Ins. Co.)* (Pa. Cmwlth., No. 233 C.D. 2019, filed July 31, 2020) (unreported), slip op. at 2 (addressing claim involving "prescribed durable medical equipment and supplies, including []NMES[] supplies, electrodes, lead wires, transcutaneous electrical nerve stimulation [] supplies, a ventilator and biofreeze pain relieving gel . . ."). This implies that there needs to be a connection to an underlying medicine, medical device, or service in order for a product to constitute a reimbursable "supply" under the WC Act.

*Bonitz Brothers, Inc. v. Workmen's Compensation Appeal Board (Wymes)*, 474 A.2d 393 (Pa. Cmwlth. 1984), further supports an inference that such a relationship is needed. In *Bonitz*, this Court concluded that a claimant's travel

expenses incurred in order to receive required medical services in New York were reimbursable as "reasonable surgical and medical services and supplies" under Section 306(f.1)(1) of the WC Act, 77 P.S. § 531(1), because they were "a reasonable and necessary incident to the authorized medical services provided to [the c]laimant in New York City and 'needed' to make such services available . . . ." *Bonitz*, 474 A.2d at 395; *see also Harbison-Walker Refractories v. Workmen's Comp. Appeal Bd. (Huntsman)*, 513 A.2d 566 (Pa. Cmwlth. 1986) (following *Bonitz*). It is not clear whether the travel expenses were deemed to be "services" or "supplies" in *Bonitz*. In either instance, however, the decision suggests that there had to be a relationship to the underlying authorized medical service in order for the non-medical expenses to be reimbursable. I am unaware of any Pennsylvania decision in which a court found a product to be a "supply" under the WC Act without supporting an underlying primary medicine, medical device, or medical service.

Here, the CBD oil Claimant purchased (for an unprescribed, off-label use not authorized by the FDA) was not itself a medicine, medical device, or medical service. Therefore, by analogy to *Scomed*, *Bond*, *Bonitz*, and *Harbison-Walker*, to be a reimbursable medical "supply" within the meaning of the WC Act, CBD oil must be incidental to and necessary for the provision of some primary, underlying aspect of Claimant's treatment. Herein lies the difficulty. CBD oil is not "a reasonable and necessary incident to the authorized medical services provided to Claimant . . . and 'needed' to make . . . available . . ." an underlying medicine, medical device, or medical service to Claimant. *Bonitz*, 474 A.2d at 395. Accordingly, I respectfully disagree with the Majority's conclusion that CBD oil purchased and used on its own could constitute a "supply" subject to reimbursement under the WC Act.

Designating as a "supply" a substance that is not approved by the FDA for the use to which it is being put also sets a dangerous precedent. Deeming CBD oil a "supply" is counterintuitive; it forces a square peg into a round hole. As I intimated earlier, doing so has potentially far-reaching consequences, allowing any claimant to seek reimbursement for any substance by simply submitting a purchase receipt and averring that the substance provides a benefit related to a work injury, with no requirement to provide scientific or regulatory support. Such a result would be absurd and would wreak chaos in WC law and practice.

Finally, even if the Board had erred by failing to consider whether CBD was a "supply" as that term is applied in the WC Act, any such error would have been harmless, as Claimant is not entitled to reimbursement in any event for the reasons discussed above. For all of these reasons, I believe the Board's decision should be affirmed.

## III. Conclusion

Based on the foregoing analysis, I conclude:

1.     Claimant did not provide proper medical support for his reimbursement request and did not trigger Employer's duty to pay.

2.     CBD oil cannot be marketed for a therapeutic purpose, or even as a dietary supplement, without premarketing approval from the FDA, which has not been given. Claimant's oral use of CBD oil as a treatment for pain is not legal; it has not been approved by the FDA because it has not been shown to be either safe or effective for such a use. Therefore, it is not subject to reimbursement under the WC Act.

3. The Board correctly declined to decide whether dietary supplement CBD oil is a "supply" under the WC Act.  Further, it does not fit the intended statutory meaning of a supply.  Moreover, even designating it as a supply would not render it subject to reimbursement.

  For these reasons, I would affirm the Board's order reversing the WCJ's decision.  Accordingly, I respectfully dissent.


           _____
           CHRISTINE FIZZANO CANNON, Judge


Judge Dumas joins in this dissent.

# Appendix

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Mark R. Schmidt,                              :
                          Petitioner   :
           v.                             : No. 1039 C.D. 2021
                                  : Argued: November 16, 2022
Schmidt, Kirifides and Rassias, PC            :
(Workers' Compensation Appeal                 :
Board),                                       :
                       Respondent   :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                   HONORABLE ANNE E. COVEY, Judge
                   HONORABLE MICHAEL H. WOJCIK, Judge
                   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                   HONORABLE ELLEN CEISLER, Judge
                   HONORABLE LORI A. DUMAS, Judge
                   HONORABLE STACY WALLACE, Judge


CONCURRING OPINION
BY JUDGE WALLACE                            FILED: November 14, 2023


While I agree with the Majority's analysis in most respects and would also reverse the Workers' Compensation Appeal Board's (Board) September 8, 2021 order, I write separately to express my belief that CBD oil is a medicine rather than a supply under the Workers' Compensation Act (the Act).[1]

Preliminarily, I understand how the Majority and Dissent differently interpret whether Dr. William Murphy prescribed cannabidiol (CBD) oil for oral ingestion, because Dr. Murphy's original prescription, the relevant text of which states "CBD oil/topical apply to affected area PRN," is subject to multiple interpretations. *See*

---

[1]  Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710.

Reproduced Record (R.R.) at 74a. The Majority interprets Dr. Murphy's prescription to include CBD oil and topical treatments separately. The Dissent interprets Dr. Murphy's prescription to include only topical use, because, as the Dissent notes, you cannot apply an orally ingested oil to an affected area. If we interpret Dr. Murphy's prescription in isolation, both are reasonable interpretations.[2] If, however, we interpret Dr. Murphy's prescription in light of Mark R. Schmidt's (Claimant) and Dr. Murphy's subsequent actions, only the Majority's interpretation is defensible.

Dr. Murphy issued the above-quoted prescription to Claimant on April 8, 2019. R.R. at 74a. Claimant explained he then separately tried CBD oil by oral ingestion and topical CBD products to see which was most effective, ultimately finding the oral treatment was effective. *See* R.R. at 175a. Workers' Compensation Judge Kathleen DiLorenzo (WCJ DiLorenzo) found Claimant's testimony credible. *See id.* at 178a. In addition, Claimant's explanation is consistent with the receipts he submitted. Claimant's first receipt, dated April 13, 2019, was for numerous products, including one 100 milliliter (ml) liquid product that Claimant never purchased again. *See id*. at 69a-72a. Beginning on May 21, 2019, and continuing through October 8, 2019, Claimant's receipts are exclusively for "CW Hemp max strength" and "CW Hemp 60 mg per 1 ml," which is an ingestible oil. *Id*. at 69a-70a.

Dr. Murphy's October 21, 2019 note provides "[Claimant] has been using CBD oil as an adjunct to his pain medication regimen." R.R. at 79a. By that date,

---

[2] "The forward slash has a variety of uses. The 'meaning' of the forward slash largely depends on how it is used in a sentence." https://www.thesaurus.com/e/grammar/slash/ (last visited November 13, 2023). "We can use a forward slash to indicate that two (or more) things have a close relationship or are in opposition to each other." *Id*.

Claimant had purchased only ingestible CBD oil for the preceding five months. *Id.* at 69a-70a. Dr. Murphy's note of October 21, 2019, does not mention topical CBD products, which evidences that Dr. Murphy understood as of that date Claimant was only ingesting the CBD oil.

On November 5, 2019, Dr. Murphy wrote a letter explaining he "recommended that [Claimant] try CBD oil. The rationale behind this recommendation is to help treat his pain and avoid increasing his dose of opioid analgesic medications. It is [Dr. Murphy's] opinion that this treatment modality is reasonable, medically necessary, and related directly to the work-related injuries . . . ." R.R. at 82a (emphasis added). Again, this letter did not mention topical CBD use. *Id.*

When I consider Claimant's receipts, his testimony, which WCJ DiLorenzo deemed credible, and Dr. Murphy's treatment notes in chronologic order, I can only conclude Dr. Murphy intended his prescription to include CBD oil for oral ingestion and that Claimant's oral ingestion of CBD oil was consistent with Dr. Murphy's treatment plan.[3] Therefore, I agree with the Majority's conclusion that substantial

---

[3] While I recognize the Dissent's concern about "allowing any claimant to seek reimbursement for any substance by simply submitting a purchase receipt and averring that the substance provides a benefit to a work injury, with no requirement to provide scientific or regulatory support," *Schmidt v. Schmidt, Kirifides & Rassias, PC (Workers' Comp. Appeal Bd.)*, ___ A.3d ___, ___ (Pa. Cmwlth., No. 1039 C.D. 2021, filed Nov. 14, 2023) (Fizzano Cannon, J., dissenting), slip op. at 23, our decision in this case is limited to the facts presented. Here, Claimant's treating physician wrote Claimant a prescription for CBD oil, which was affirmed by later references in the treatment plan of his patient, i.e., Claimant. In this case, even if the benefits of ingesting CBD oil are merely anecdotal, a licensed treating physician is overseeing this treatment. The risk of "wreak[ing] chaos" is tempered when, as here, a doctor who answers to the Commonwealth's licensure requirements directs the treatment. *See Schmidt*, ___ A.3d at ___ (Fizzano Cannon, J., dissenting), slip op. at 23; *see also* the Medical Practice Act of 1985, Act of December 20, 1985, P.L. 457, *as amended*, 63 P.S. §§ 422.1-422.53. Therefore, claimants will only be able to obtain prescriptions for medicines and supplies that a doctor believes she is permitted and is willing to prescribe. In
**(Footnote continued on next page…)**

evidence supports WCJ DiLorenzo's findings of fact on this issue, and the Board should not have disturbed those findings of fact on appeal.

Turning to the issue of whether CBD oil is a medicine or a supply under Section 306(f.1) of the Act, I agree with the Majority's recitation of our obligations when engaging in statutory construction. In applying dictionary definitions to determine common and approved usage of undefined words, however, I would begin by considering the context in which those words appear. Then I would select a dictionary definition that fits in the context of each word's use.

Section 306(f.1) of the Act uses the words "medicines" and "supplies." 77 P.S. § 531(1)(i), (ii). The word "medicines" appears three times in Section 306(f.1), while the word "supplies" appears five times.[4] Three of the times each word is used is in the phrase "medicines and supplies." The definition the Majority attributes to "supplies" is so broad that all "medicines" are also "supplies." *See Schmidt v. Schmidt, Kirifides & Rassias, PC (Workers' Comp. Appeal Bd.)*, ___ A.3d ___, ___

---

addition, as the Majority properly notes, the Utilization Review process provides employers with a means of reviewing "the reasonableness or necessity of medical treatment rendered to, or proposed for, work-related injuries." *Schmidt*, ___ A.3d at ___ , slip op. at 30-31 (citing Section 306(f.1)(6) of the Act, 77 P.S. § 531(6)).

[4] First, Section 306(f.1)(1)(i) states "[t]he employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers, including an additional opinion when invasive surgery may be necessary, **medicines** and **supplies**, as and when needed." 77 P.S. § 531(1)(i) (emphasis added). Second, Section 306(f.1)(1)(ii) states "[i]n addition to the above service, the employer shall provide payment for **medicines** and **supplies**, hospital treatment, services and **supplies** and orthopedic appliances, and prostheses in accordance with this section." 77 P.S. § 531(1)(ii) (emphasis added). Third, Section 306(f.1)(8) states "[i]f the employe shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, **medicines** and **supplies**, he shall forfeit all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal." 77 P.S. § 531(8) (emphasis added). Lastly, Section 306(f.1)(9) states "[t]he payment by an insurer or employer for any medical, surgical or hospital services or **supplies** after any statute of limitations provided for in this act shall have expired shall not act to reopen or revive the compensation rights for purposes of such limitations." 77 P.S. § 531(9) (emphasis added).

SW - 4

(Pa. Cmwlth., No. 1039 C.D. 2021, filed Nov. 14, 2023), slip op. at 29 (defining "supplies" as "any item that is essential for treating illness or injury"). If all "medicines" are also "supplies," then the word "medicines" would not have any meaning in the Act. Therefore, I believe the Majority's interpretation of the meaning of "supplies" under Section 306(f.1) of the Act violates our mandate in statutory construction to give effect to every word in a statute. *See* 1 Pa.C.S. § 1922(2). My belief that the General Assembly did not intend all "medicines" to be included within "supplies" is further supported by the General Assembly's use of "supplies" on two occasions in Section 306(f.1) of the Act after the adjective "hospital" and without the word "medicines."

Accordingly, when I consult a dictionary to ascertain the meaning of "medicines" and "supplies" in accordance with common and approved usage, I would utilize only definitions that do not subsume one another. A "medicine" is defined as "any drug or remedy."[5] A medicine is not a drug under Section 306(f.1) of the Act, because Section 306(f.1) separately uses the term "drug" on numerous occasions.[6] *See* 77 P.S. § 531. A "remedy" is defined as "an agent that cures disease or alleviates its symptoms."[7] As the Majority correctly notes, Dr. Murphy prescribed CBD oil to Claimant for the purposes of alleviating his pain and avoiding the need to increase the dosage of opioid pain medications. Thus, Dr. Murphy prescribed CBD oil as an agent to alleviate Claimant's pain symptoms, and I would conclude

---

[5] *See* https://medical-dictionary.thefreedictionary.com/medicine (last visited November 13, 2023).

[6] The use of "medicines" as opposed to "drug" adds further support to the Majority's position that Food and Drug Administration approval is not a prerequisite for reimbursement of "medicines" under the Act.

[7] *See* https://medical-dictionary.thefreedictionary.com/remedy (last visited November 13, 2023).

that, under the facts presented in this case, CBD oil qualifies as "medicines" under Section 306(f.1) of the Act.

While the Majority correctly notes that Segen's Medical Dictionary defines "medical supplies" as "[a]ny item that is essential for treating illness or injury," I begin by considering what constitutes an "item."[8]  An "item" is defined as "an individual article or unit, especially one that is part of a list, collection, or set." https://languages.oup.com/google-dictionary-en/ (last visited November 13, 2023). Returning to Segen's Medical Dictionary, a comment immediately following the definition of "medical supplies" explains:

> In the working parlance, medical supplies are usually understood to mean articles which are low-cost, disposable, and used in high enough volume that the purchasing department has standing orders in place to ensure that the items of interest (e.g., gloves, gauze, needles and syringes) are never out of stock.

*See* https://medical-dictionary.thefreedictionary.com/Medical+Supplies (last visited November 13, 2023).  "[W]orking parlance" and "usually understood to mean" are synonymous with common and approved usage.  As a result, I would consider the common definition of an "item" together with the comment following the Segen's Medical Dictionary's definition of "medical supplies" to mean that CBD oil does not qualify as "supplies" under Section 306(f.1) of the Act.

Although I believe WCJ DiLorenzo erred as a matter of law in interpreting "supplies" under Section 306(f.1) of the Act to include CBD oil, WCJ DiLorenzo's error was harmless because CBD oil as administered in this case is included as "medicines" under Section 306(f.1) of the Act.  Therefore, like the Majority, I would

---

[8]   The same medical dictionary's definition of "item" is in reference to clinical trials, which is inapplicable here, so I considered an ordinary definition of an "item," which is more akin to "a thing."

reverse the Board's order reversing WCJ DiLorenzo's decision granting Claimant's Penalty Petition.

_____
STACY WALLACE, Judge
